UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| OLEG MASKAEV and DENNIS RAPPAPORT PRODUCTIONS, LTD., <br><br> Plaintiffs, <br><br> -against- <br><br> WORLD BOXING COUNCIL, SAMUEL PETER, DUVA BOXING, LLC and DON KING PRODUCTIONS, INC., <br><br> Defendants. | Civil Action No. 07 CV 3147 (DAB) |

## WORLD BOXING COUNCIL'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT OR STAY THE PROCEEDINGS PENDING MEDIATION

L. Peter Parcher (LP 8096)
Jonathan Melber (JM 1000)
MANATT, PHELPS & PHILLIPS, LLP
7 Times Square
New York, NY 10036
(212) 790-4500

*Attorneys for Defendant World Boxing Council*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii
PRELIMINARY STATEMENT ............................................................................................... 1
BACKGROUND ........................................................................................................................ 2
    A.    The Dispute Resolution Provisions Of The World Boxing Council Rules ........... 2
    B.    The Initial Dispute: Peter And Klitschko Disagree About Who Will Fight Maskaev ........................................................................................................ 3
    C.    The Second Dispute: Maskaev And The WBC Disagree About The Length Of The Free Negotiation Period ............................................................................ 5
    D.    The Current Dispute: Maskaev And Rappaport Disagree With The WBC And Peter About The Purse Split And Promotion Rights ...................................... 5
ARGUMENT .............................................................................................................................. 7
CONCLUSION ......................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Allied-Bruce Terminix Cos., Inc. v. Dobston,*
    13 U.S. 265 (1995) .................................................................................................... 7

*Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.,*
    117 F.3d 655 (2d Cir. 1997) ...................................................................................... 8

*ChampionsWorld, LLC v. U.S. Soccer Fed., Inc.,*
    487 F. Supp. 2d 980 (N.D. Ill. 2007) ......................................................................... 9

*Chelsea Square Textiles, Inc. v. Bombay Dyeing and Mfg. Co., Ltd.,*
    89 F.3d 289 (2d Cir. 1999) ........................................................................................ 7

*Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S.,*
    9 F.3d 1060 (2d Cir. 1993) ........................................................................................ 7

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
    460 U.S. 1 (1983) ....................................................................................................... 7

*Oldroyd v. Elmira Sav. Bank, FSB,*
    134 F.3d 72 (2d Cir. 1998) ........................................................................................ 7

*Organizing Comm. for the 1998 Goodwill Games, Inc. v. Goodwill Games, Inc.,*
    919 F. Supp. 21 (D.D.C. 1995) ................................................................................. 9

**STATUTES AND RULES**

9 U.S.C. § 2 .......................................................................................................................... 7

9 U.S.C. § 3 .......................................................................................................................... 7

9 U.S.C. § 4 .......................................................................................................................... 7

United States Internal Revenue Code Section 501(c)(6) ................................................... 2

Defendant World Boxing Council respectfully submits this memorandum of law in support of its motion to dismiss the Amended Complaint or stay the proceedings pending mediation and, if necessary, mandatory binding arbitration.

## PRELIMINARY STATEMENT

Plaintiffs Oleg Maskaev and Dennis Rappaport Productions, Ltd. concede that this action is based entirely upon alleged violations of two rules of the World Boxing Council, yet in bringing this action in federal court, they have violated the dispute resolution provisions of the very rules they seek to enforce. First, plaintiffs dispute the WBC's application of its rule governing the split of the "purse" between Maskaev, the defending heavyweight champion, and defendant Samuel Peter in their upcoming championship bout. Second, plaintiffs dispute the WBC's decision under another WBC rule to accept the bid of defendant Don King Productions, Inc. to promote the bout. But in failing to abide by the dispute resolution provisions of those rules, plaintiffs ignore the same provisions that they sought to enforce just a few short months ago in a separate dispute over who would participate in the championship bout. When it was to their benefit, plaintiffs demanded compliance with the alternate dispute resolution provisions of the WBC Rules and Regulation, to which they both contractually agreed in writing. Now, when the WBC has made rulings that plaintiffs contend are contrary to their interests, they seek to flout those rules. Plaintiffs should not be permitted to pick and choose which WBC rules they wish to invoke and when they wish to invoke them.

Longstanding federal policy and law favor arbitration. Although the WBC is confident that the Court would reach a just decision in its favor on the merits, the WBC should not be forced to endure the great expense of litigation when the contracts at issue indisputably provide for compulsory mediation and, if necessary, mandatory binding arbitration in the Court of Arbitration for Sport, which has extensive experience in the efficient resolution of similar

disputes. Plaintiffs should be ordered to compulsory mediation and, if necessary, to mandatory binding arbitration under the World Boxing Council rules and the Amended Complaint should be dismissed with prejudice.

## BACKGROUND[1]

### A.   The Dispute Resolution Provisions Of The World Boxing Council Rules

The World Boxing Council ("WBC"), an international association based in Mexico, promotes and regulates boxing by classifying and ranking boxers by weight class and by sanctioning championship bouts. (Am. Compl. ¶¶ 1, 5) The World Boxing Council is an association existing under the laws of Mexico and recognized as a not-for-profit association under United States Internal Revenue Code Section 501(c)(6). (Declaration of Robert J.B. Lenhardt dated July 31, 2007 ("Lenhardt Decl."), ¶ 2) The WBC is governed by rules and regulations (the "WBC Rules") that require champions to periodically defend their titles against "official mandatory challengers" designated by the WBC in a match known as a "mandatory defense" bout. (Am. Compl. ¶ 5) Any disputes arising under the WBC Rules are subject to a mandatory dispute resolution process under WBC Rule 5:

> Rule 5.1, Exclusivity of Remedies: Any boxer, promoter, manager or other person or organization that participates in the activities or events of the WBC, or who avail themselves, or claim any right arising on the WBC Constitution or these Rules and Regulations, agree that their exclusive remedies are the administrative remedies and the dispute resolution procedures provided for herein.
>
> [. . .]
>
> Rule 5.3, Compulsory Mediation: Any unresolved claim, controversy or dispute against the WBC must be submitted to non-binding mediation . . .

---

[1] For purposes of this motion only, defendant World Boxing Council accepts as true the allegations contained in the Amended Complaint, the Declaration of Dennis Rappaport and the documents attached thereto.

> Rule 5.4, Mandatory Arbitration: Any dispute arising directly or indirectly on the occasion of or in connection with a WBC sanctioned bout or any decision made by the WBC, which the parties have been unable to resolve pursuant to the procedures provided for in Rules 5.2 and 5.3, will then be settled exclusively by mandatory arbitration by the Court of Arbitration for Sports [sic].

(WBC Rules attached as Exhibit 1 to Declaration of Dennis Rappaport dated April 19, 2007 ("Rappaport Decl.")) The Court of Arbitration for Sport is based in Switzerland and has an office in New York, New York.[2]

### B. The Initial Dispute: Peter And Klitschko Disagree About Who Will Fight Maskaev

Maskaev is a professional boxer who won the WBC world heavyweight championship from Hasim Rahman in August 2006, and Dennis Rappaport Productions, Ltd. is Maskaev's promoter. (Am. Compl. ¶¶ 3, 4, 15; Rappaport Decl. ¶ 9) Vitali Klitschko preceded Rahman and Maskaev as the WBC world heavyweight champion, but he retired from the ring for medical reasons in 2005. (Am. Compl. ¶ 13) Upon his retirement, the WBC declared Klitschko the "Heavyweight Champion Emeritus," a title that Klitschko later claimed gave him the right to be the designated official challenger against the current champion if he returned to boxing. (Id. ¶ 14) The WBC Rules, however, state only that, "under extreme special circumstances" for a proposed bout with a "legendary boxer" that could result in a great promotion, prestige and importance for the sport of boxing, the WBC "*may*" – but not "*must*" – sanction such bout as a mandatory bout. (Rappaport Decl. Ex. 1, Rule 1.21(b)(x))  In December 2006, while Maskaev was the reigning champion, Klitschko informed the WBC that he had been cleared by his doctors to fight and wished to be designated the official mandatory challenger against Maskaev. (Am. Compl. ¶ 15) Maskaev, wanting to box Klitschko rather than defendant Samuel Peter, who had

---

[2] See http://www.tas-cas.org/en/info/frminf.htm ("decentralized office" located at the American Arbitration Association, 335 Madison Avenue in New York, New York).

been awarded the victory in a final elimination bout in a decision on September 2, 2006, agreed, and Rappaport asked the WBC to sanction a championship bout between his client and Klitschko. (*Id.* ¶ 16) Shortly thereafter, however, in January 2007, Peter won the ordered rematch of the controversial final elimination bout, and remained eligible for the next mandatory defense bout. (*Id.*) Thus, two potential challengers – Peter and Klitschko – were vying for the opportunity to fight Maskaev for the championship. (*Id.*)

On January 31, 2007, the WBC directed the representatives of Maskaev, Klitschko and Peter to attend a mandatory mediation under Rule 5.3 of the WBC Rules to determine who would box Maskaev in the mandatory defense bout. (Am. Compl. ¶ 18; Rappaport Decl. Ex. 1 (Rule 5.3) and Ex. 5 (January 31, 2007 letter)) Maskaev immediately agreed to the mediation, specifically acknowledging that WBC Rule 5 governed the dispute. (*Id.* ¶ 18; Rappaport Decl. Ex. 6) Peter, however, refused to participate in the mediation on the grounds that the WBC had not yet issued a decision for any of the parties to challenge. (Rappaport Decl. Ex. 7) On February 1, 2007, Maskaev's counsel wrote to the WBC, demanding that the mediation proposed by the WBC proceed immediately:

> [A] failure to participate in good faith in the mediation process, as **mandated** by Rules 5.3 and 5.3(f), is a direct violation of the Rules and Regulations [of the WBC]. . . The words **"compulsory"** and **"mandatory"** have meaning here. These are not voluntary processes. . . It should be emphasized that pursuant to Rule 5.1 and 5.5, these Rules and Regulations clearly and unequivocally provide the **exclusive remedies** to "any boxer, promoter, manager, or other person or organization that participates in the activities or events of the WBC, or who avail themselves, or claim any right arising on the WBC Constitution or these Rules and Regulations."

(Rappaport Decl. Ex. 9 (original emphasis); Am. Compl. ¶ 19) Despite this repeated insistence on mediation under WBC Rule 5, Maskaev consented to meet with Peter's and Klitschko's representatives to "work out a deal." (Am. Compl. ¶ 20) Eventually, Klitschko withdrew from

the process, essentially resolving the first dispute among the parties by leaving Peter as the official mandatory challenger. (Am. Compl. ¶ 21)

### C. The Second Dispute: Maskaev And The WBC Disagree About The Length Of The Free Negotiation Period

After Klitschko withdrew from consideration, Maskaev and Peter engaged in a "free negotiation period" under the WBC Rules to negotiate the promotion of the championship bout. (Rappaport Decl. Ex. 1, Rule 2.3) Maskaev claimed that the WBC unjustly abbreviated the free negotiation period to 11 days and filed a motion for a temporary restraining order and preliminary injunction to extend the period to 45 days. (Plaintiffs' Memorandum of Law in Support of Application for Temporary Restraining Order and Motion for Preliminary Injunction, filed April 19, 2007) This dispute was resolved when the Court denied plaintiffs' motion; after the parties were unable to reach an agreement, the WBC held a "purse bid," or an auction of the rights to promote the mandatory defense bout, as required under the WBC Rules. (Am. Compl. ¶ 27) Defendant Duva Boxing, LLC won the purse bid but ultimately failed to deposit the required 10% of the purse offer. (Id. ¶¶ 29-37) As a result, the WBC declared defendant Don King Productions, Inc. ("DKP"), the second-highest bidder, to be the winning bidder. (Id. ¶ 38)

### D. The Current Dispute: Maskaev And Rappaport Disagree With The WBC And Peter About The Purse Split And Promotion Rights

The WBC Board of Governors voted that the purse offer be split 55-45% between Maskaev and Peter respectively. (Am. Compl. ¶ 25; Rappaport Decl. ¶ 18 and Ex. 16) Although the WBC Rules generally provide for a 70/30 split between the champion and contender, Rule 2.12(d) specifically provides for a 55/45 split in special circumstances:

> [T]he Board of Governors may, in its discretion and by a majority vote, modify the division of purse offer proceeds between boxers in a purse offer in unusual or special cases, like the consideration of the outstanding marketing value of one of the boxers . . . The modification of the split will be limited to three categories: 70-

>30%; 60-40%; and 55-45% for the Champion and challenger, respectively.

(Rappaport Decl. Ex. 1, Rule 2.12(d)) Thus, in deciding on the 55/45 purse split, the WBC Board of Governors was exercising its discretion under WBC Rule 2.12(d) by considering such factors as the marketing value of Samuel Peter (who fought two final elimination bouts) relative to Oleg Maskaev and their reported historical purses. (*Id.*) Before deciding on the 55/45 split, the WBC had informed Maskaev of its position that the Maskaev mandatory defense bout "is and has clearly been" an unusual or special case, requiring the WBC to put the purse split to a vote by the Board of Governors, and plaintiffs *concede* that the determination of "whether the situation was 'unusual or special' *was for the Board of Governors to decide*." (Rappaport Decl. ¶18 and Ex. 14 (emphasis added)) Notwithstanding this concession, however, Maskaev now demands a 70/30 purse split.

Plaintiffs also dispute the acceptance of DKP's purse offer bid. According to the Amended Complaint, DKP's bid should have been disqualified under WBC Rule 2.5(b) because DKP is allegedly a 50% owner of Duva Boxing. (Am. Compl. ¶ 38) Plaintiffs demand that Dennis Rappaport Productions, Ltd., the third-highest bidder, be declared the winning bidder. (*Id.* ¶ 44)

Plaintiffs have invoked the dispute resolution provision of the WBC Rules time and again in the course of the events preceding the current dispute over the purse split and promotion rights. It is therefore uncontested and uncontestable that this dispute should be resolved in mediation under WBC Rule 5.3; should the mediation fail, the dispute must proceed to mandatory binding arbitration before the Court of Arbitration for Sports under Rule 5.4 of the WBC Rules. There is simply no place for this case in federal court. The amended complaint should be dismissed and the new dispute should proceed to mediation.

## ARGUMENT

The present motion to compel mediation and, if necessary, mandatory binding arbitration is governed by the Federal Arbitration Act ("FAA") because it involves interstate commerce. *See* 9 U.S.C. § 2 (West 2006) (A written agreement to arbitrate in a contract "evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable."); *Allied-Bruce Terminix Cos., Inc. v. Dobston*, 513 U.S. 265 (1995). There is no question that this case involves interstate commerce, as demonstrated by the upcoming Maskaev-Peter bout, a match between a Russian citizen living in New York and a Nigerian citizen residing in Nevada, sanctioned by the WBC, an organization based in Mexico. (Am. Compl. ¶ 1) The purse offer ceremony occurred in Mexico City, and the bout will be televised throughout the USA, as well as internationally. (Rappaport Decl. Ex. 16) The FAA therefore governs this motion.

Through the FAA, Congress declared a "strong federal policy favoring arbitration as an alternative means of dispute resolution." *Chelsea Square Textiles, Inc. v. Bombay Dyeing and Mfg. Co., Ltd.*, 189 F.3d 289, 294 (2d Cir. 1999), quoting *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 76 (2d Cir. 1998). This bias in favor of arbitration "is even stronger in the context of international transactions," such as the purse bid giving rise to the present dispute. *Chelsea Square Textiles*, 189 F.3d at 294, quoting *Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S.*, 9 F.3d 1060, 1063 (2d Cir. 1993). In deference to the Congressional policy underpinning the FAA, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Chelsea Square Textiles*, 189 F.3d at 294, quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). Under the FAA, a court is to compel arbitration if it is satisfied that the matter at issue is within the scope of the arbitration agreement. 9 U.S.C. §§ 3, 4 (West 2006). As the Supreme

Court has made clear, "[b]y its terms, the Act leaves no place for the exercise of discretion by a district court, but, instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original).

In determining whether a particular dispute is arbitrable, a court must engage in a two-part inquiry and decide (1) whether the parties agreed to arbitrate, and if so, (2) whether the scope of that agreement encompasses the asserted claims. *Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.*, 117 F.3d 655, 666 (2d Cir. 1997). The present dispute fulfills both elements of this inquiry.

*First*, there is no question that Maskaev and Rappaport agreed to abide by the compulsory mediation and mandatory binding arbitration provisions in WBC Rule 5. Both Maskaev and Rappaport signed contracts with the WBC agreeing to abide by the WBC Rules and explicitly acknowledging that the alternate dispute resolution provisions of the WBC Rules are their exclusive remedies. (Lenhardt Decl. Exs. 1 (Professional Boxer's Compliance Agreement signed by Maskaev on October 24, 2005) and 2 (Registered Promoters Agreement signed by Dennis Rappaport on May 3, 2007)) Moreover, the WBC Rules clearly state, "These championship and elimination rules shall be applied to all WBC-recognized world championship and elimination contests, and are entitled to, and must receive the full recognition and respect from all champions and challengers of the world." (Rappaport Decl. Ex. 1, Rule 1.1) By fighting in the championship bout where he won his heavyweight title and by engaging in the upcoming mandatory defense bout against Peter, Maskaev agreed to abide by the WBC Rules, including the compulsory mediation and mandatory binding arbitration provisions of Rule 5. Finally, Maskaev explicitly *agreed* – and, in fact, *demanded* – to mediate the initial dispute over

whom he would fight in the mandatory defense bout. (Am. Compl. ¶¶ 18, 19; Rappaport Decl. Exs. 6 and 9) Plaintiffs' agreement to abide by Rule 5 could not be clearer.

*Second*, the current dispute arises directly from the alleged breach of WBC Rule 2.12, governing the "Division of Proceeds in a Purse Offer," and WBC Rule 2.5(b), "Right to Participate in a Purse Offer." (Rappaport Decl. Ex. 1, Rules 2.12 and 2.5(b)) Maskaev is unhappy with the division of proceeds and seeks a 70/30 split in his favor instead of the 55/45 split decided upon by the WBC Board of Governors. (Am. Compl. ¶¶ 24-25) Rappaport maintains that his company, not DKP, is the rightful promoter of the bout under WBC Rule 2.5(b). (*Id.* ¶ 44) Plaintiffs acknowledge, as they must, that the "WBC mandatory rules" govern the purse split and promotion rights. (*Id.* ¶¶ 24, 44) Indeed, plaintiffs cite the WBC Rules throughout the Amended Complaint, invoking them to buttress each and every element of their claims. (*Id.* ¶¶ 5, 11, 12, 15, 30-35, 37, 38, 44) Given that plaintiffs' claims are based squarely on the WBC Rules, it is inconceivable that their demand for relief and the current dispute over the purse split and promotion rights would be governed by anything other than the WBC Rule 5 dispute resolution provisions, which clearly call for compulsory mediation and, if necessary, mandatory binding arbitration. (Rappaport Decl. Ex. 1, Rule 5)

Federal courts routinely uphold arbitration agreements in the sports context, including referring disputes to the Court of Arbitration for Sport, the same arbitration tribunal required under WBC Rule 5.4. *See, e.g., ChampionsWorld, LLC v. U.S. Soccer Fed., Inc.*, 487 F. Supp. 2d 980 (N.D. Ill. 2007) (granting defendant's motion to stay or dismiss pending arbitration by the Court of Arbitration for Sport); *Organizing Comm. for the 1998 Goodwill Games, Inc. v. Goodwill Games, Inc.*, 919 F. Supp. 21, 25 (D.D.C. 1995) (granting motion to compel arbitration based on agreement to "arbitrate all disputes" relating to contract to organize and plan Goodwill

Games). In this case, mediation and, if necessary, arbitration by the Court of Arbitration for Sport – an independent panel experienced in sports-related disputes – would be far less time-consuming and costly than full-blown litigation in federal court. Consequently, the Amended Complaint should be dismissed or, at the very least, stayed pending mediation and arbitration, and plaintiffs' claims should be ordered to compulsory mediation under WBC Rule 5.3 and onto mandatory binding arbitration before the Court of Arbitration for Sport under WBC Rule 5.4 should mediation fail to resolve the dispute.

## CONCLUSION

For these reasons, the World Boxing Council respectfully requests that the Court compel plaintiffs to mediate their claims under WBC Rule 5.3, and, if mediation fails to resolve their claims, to arbitrate them before the Court of Arbitration for Sport under WBC Rule 5.4.

Dated: New York, New York.
July 31, 2007

Respectfully submitted,

MANATT, PHELPS & PHILLIPS, LLP

By: /s/ L. Peter Parcher
    L. Peter Parcher (LP 8096)
    Jonathan Melber (JM 1000)

7 Times Square
New York, NY 10036
(212) 790-4500

*Attorneys for Defendant World Boxing Council*

80399517.3