Jethro M. Eisenstein (JE 6848)
PROFETA & EISENSTEIN
14 Wall Street, 22nd Floor
New York, New York 10005
Tel. No.: (212) 577-6500
Fax No.: (212) 577-6702

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------

OLEG MASKAEV and DENNIS            Index No.:
RAPPAPORT PRODUCTIONS, LTD.,       07 CV 3147 (DAB)

       Plaintiffs,

  -against-

WORLD BOXING COUNCIL, SAMUEL
PETER, DUVA BOXING, LLC and
DON KING PRODUCTIONS, INC.,

       Defendants.

----------------------------------


PLAINTIFFS' MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS AMENDED COMPLAINT OR STAY
<u>PROCEEDINGS PENDING MEDIATION</u>

Preliminary Statement

In the above-captioned action, defendant World Boxing Council ("WBC") has moved to dismiss the Amended Complaint or stay the proceedings pending mediation and if necessary mandatory binding arbitration. These alternative dispute resolution procedures are said to be required by WBC Rule 5, the text of which is attached to the moving Declaration of Robert J. B. Lenhardt, executed on July 30, 2007, as part of Exhibit 2. Defendants Samuel Peter ("Peter") and Duva Boxing, LLC ("Duva") have joined in the WBC motion, adopting the WBC's presentation in its entirety. Defendant Don King Productions, Inc. ("DKP") has not yet appeared in the action.

This is not the first time that WBC Rule 5 has been invoked in this case. The obligation to proceed under Rule 5 rather than in Court was asserted in opposition to plaintiffs' application for preliminary injunctive relief, made on April 19, 2007. This Court's comments about the invocation of Rule 5, made at that time, are equally applicable to the defendants' contentions on this motion and are quoted below. As plaintiffs demonstrate herein,

the defendants WBC and Peter have, by their conduct, waived the right to insist on arbitration under WBC Rule 5.

Factual Statement

The WBC has stated that for the purpose of this motion it accepts as true the allegations contained in plaintiffs' amended complaint, the Declaration of Dennis Rappaport submitted in connection with the motion for preliminary injunctive relief and the documents attached thereto. See WBC memo, footnote 1 at page 2. For the purpose of this motion, the operative facts, may, accordingly, be summarized as follows:

Plaintiff Oleg Maskaev ("Maskaev") is the WBC heavyweight champion (Amended Complaint, ¶3). The last WBC heavyweight champion before Maskaev who earned his title in the ring was Vitali Klitschko, who retired for medical reasons on November 8, 2005. On December 20, 2005, following his retirement from the ring, the WBC declared Vitali Klitschko its "Heavyweight Champion Emeritus". In addition, the WBC promised Klitschko that if he ever returned to boxing, he would be designated the immediate official mandatory challenger against the current champion

and would therefore be the opponent in the heavyweight champion's next mandatory defense. (Amended Complaint ¶¶13-14).[1]

On August 12, 2006 Maskaev knocked out Hasim Rahman and became the WBC heavyweight champion. In December 2006, Klitschko informed the WBC that he had been cleared by his doctors to fight, and intended to return to the ring. He requested that the WBC honor the commitment it had made when it named him "Champion Emeritus" a year earlier, to make him the designated official (mandatory) challenger (Amended Complaint ¶15).

In early January 2007, two events occurred that collectively precipitated this dispute: on January 6, 2007 defendant Peter defeated James Toney in a WBC heavyweight qualifying bout. This made Peter the WBC number one ranked contender, eligible under the rules for the next mandatory defense. On January 12, 2007 Klitschko officially informed the WBC that he was ready to fight, and requested that the

---

[1] The WBC, having "accepted" the facts in plaintiffs' amended complaint, cannot quite accept this one and recasts it as follows: "Upon his retirement, the WBC declared Klitschko the 'Heavyweight Champion Emeritus,' a title that Klitschko <u>later claimed</u> gave him the right to be the designated official challenger against the current champion if he returned to boxing." WBC memo at 3; emphasis added. In fact, the WBC issued a press release announcing that the right had been bestowed on Klitschko. See Exhibit 1, attached to the accompanying declaration of Jethro M. Eisenstein.

4

WBC recognize him as Maskaev's next opponent. (Amended Complaint ¶16).

In the week of January 15, 2007, the WBC Board of Governors decided by a vote of 24 to 8 to authorize the bout between Maskaev and Klitschko as Maskaev's mandatory defense. However, because of a threat of legal action on behalf of Peter, this decision was withheld and concealed by the WBC and was never made public. (Amended Complaint ¶17).

On January 31, 2007, having created competing and conflicting claims for the next mandatory challenge to its champion Maskaev, the WBC directed the representatives of Klitschko, Peter and Maskaev to resolve their differences pursuant to WBC Rule 5, which calls for mandatory mediation of such disputes (Amended Complaint ¶18).

The same day, Maskaev's lawyer, Mark A. Kirkorsky, wrote to the WBC, agreeing to participate in this process. On the same day however, Peter's lawyer wrote to the WBC refusing to participate in this process. Counsel for the WBC immediately wrote back to Peter's lawyer that the WBC took his letter as a refusal to abide by the rules. (Id.)

Maskaev's lawyer wrote to the WBC, noting that Peter had clearly refused to abide by the rules and asking that Peter be sanctioned for this refusal. Maskaev's lawyer

5

pointed out that a failure to enforce the rules against Peter set a dangerous precedent (Letter of February 1, 2007 attached to Rappaport Declaration as Exhibit 7 and to the accompanying Declaration of Jethro M. Eisenstein as Exhibit 2). Maskaev's lawyer argued that the WBC should immediately approve a Maskaev – Klitschko championship bout, (a) because Peter had refused to abide by Rule 5, (b) because the WBC Board of Governors had actually previously voted to approve a Maskaev-Klitschko bout prior to Peter's threats of a lawsuit, and (c) because Maskaev was entitled under the WBC rules to participate in a Maskaev – Klitschko championship bout as a voluntary defense of his title (Amended Complaint ¶¶18-19).

On February 5, 2007, counsel for the WBC wrote to all parties, reiterating the view of the WBC that representatives of Peter had rejected the compulsory mediation required by WBC Rule 5. However, the WBC never took action to require Peter to participate in the Rule 5 process, and never punished him for his refusal to do so. (Amended Complaint, ¶¶20-22).

On April 9, 2007, the WBC announced that Maskaev was required to make a mandatory defense of his WBC title against defendant Peter, and called for a purse bid if voluntary agreement on terms for the bout was not reached.

No agreement was reached, and the purse bid was conducted on May 7, 2007 (Amended Complaint, ¶23).

The WBC mandatory rules provide for the champion to receive 70% of the proceeds of the purse bid and the challenger to receive 30% of the proceeds (Amended Complaint, ¶24).

On April 16, 2007, at the request of Peter's promoter DKP, the WBC ordered that champion Maskaev would receive only 55% of the proceeds of the purse bid, and challenger Peter would receive 45% of the proceeds of the purse bid, despite there being no precedent for such a modification except in the case of a bout with a former champion with extraordinary marquee value (Amended Complaint, ¶25).

As is apparent from the above recitation, this is the same dispute about who is to face Maskaev in the mandatory heavyweight bout, and on what terms, that has been playing out since the end of 2006. It is the same dispute, about the same bout, that was brought to the Court's attention in April in the motion for preliminary injunctive relief.

The disparity between the WBC's treatment of Peter, who has been permitted to flout the Rule 5 procedures, and of Maskaev, who is required to employ them exclusively, is obvious. In an effort to blunt this, the WBC asserts that "Peter . . . refused to participate in the mediation on the grounds that the WBC had not yet issued a decision for any

7

of the parties to challenge." (WBC Memo at 4). This explanation is specious, as the procedures under Rule 5 do not require a "decision". Rule 5 by its terms covers any "problem or dispute", "any claim, complaint or protest against the WBC, or any controversy, appeal or dispute concerning the WBC constitution or [its] rule and regulations".[2] At the time of Peter's refusal to comply with Rule 5 there was surely a dispute, as the WBC had promised two people (Peter and Klitschko) the right to be Maskaev's opponent in the upcoming fight.

Upon learning these facts, this Court made comments and then a determination which collectively highlight the underlying inequity of the WBC/Peter motion. Initially, this Court asked WBC counsel Lenhardt to address plaintiffs' contention, which is accepted as true by the WBC for the purpose of this motion, that the WBC abdicated its responsibility when there was a three-way circus and did nothing to resolve it. The Court observed that these facts, if proven, would "put the WBC in a different footing in terms of saying, now we want [Maskaev] to abide by the rules when we permitted others not to and we didn't do our

---

[2] Peter has also claimed that he is exempt from Rule 5 because he has "contract" claims against the WBC, but the quoted language covers "any claim . . . against the WBC," so this excuse for refusing arbitration fails as well.

jobs ourselves." (Transcript of proceedings, 4/19/07, p.23; a copy of the transcript is attached to the accompanying Declaration of Jethro M. Eisenstein as Exhibit 3).

After hearing the WBC counsel's "explanation" that the WBC could not act because both Peter and Klitchko insisted that they had the right to be Maskaev's opponent, the Court said "I don't see why that is a reason to abdicate your authority and ability or discretion, however you want to look at it, to make a decision and get this thing moving way before it turns up here." (Transcript of proceedings, 4/19/07, p.30).

After hearing all the parties, the Court rejected the WBC claim that Section 5 represented Maskaev's exclusive remedy:

> "The administrative exclusivity under Section 5.1-5 of the Rules might, in the first instance, be impressive as a basis for the Court not getting involved, however, when the WBC doesn't apply its own rules, that is the new rule in 2005 that could have solved this problem a long time ago, it seems to me that it is unfair to insist that the plaintiff follow the rules of being precluded from coming into court."

Transcript of proceedings, 4/19/07, p.49.

9

Argument

The right to insist on arbitration is a contract right, and like any other contract right it can be waived:

> "The Supreme Court has made clear that the 'strong federal policy in favor of enforcing arbitration agreements' is based upon the enforcement of contract rather than a preference for arbitration as an alternative dispute resolution mechanism. [Dean Whitter Reynolds, Inc. v.] Byrd, 470 U.S. [213] at 218-224, 105 S.Ct. [1238] at 1241-44. Thus the question of whether there has been a waiver in the arbitration agreement context should be analyzed in much the same way as in any other contractual context. The essential question is whether, under the totality of the circumstances, the defaulting party has acted inconsistently with the arbitration right."

National Foundation for Cancer Research v. A. G. Edwards & Son, Inc., 821 F.2d 772, 774 (D.C. Cir. 1987).

A party waives its right to arbitrate when it actively participates in a lawsuit or takes other action inconsistent with the right to insist upon arbitration. Cornell & Co., Inc. v. Barbara & Ross Co., 360 F.2d 512 (D.C. Cir. 1966).

One of the ways in which a party can be found to have waived its right to insist on arbitration is by refusing to

recognize that an arbitration agreement imposes obligations on all parties to it and may not be invoked selectively. This is what occurred in Lane, Ltd. v. Larus & Brother Company, 243 F.2d 364 (2d Cir. 1957). In Lane, there was an arbitration agreement and the plaintiff had sought to submit its dispute with defendant to arbitration. The defendant rebuffed this request. When plaintiff commenced litigation, however, the defendant pleaded the agreement to arbitrate and moved for a stay of the suit pending arbitration:

> "[Defendant] Larus moved under Section 3 of the Federal Arbitration Act 9 U.S.C.A. §3, for a stay of the suit pending arbitration, and pleaded the arbitration clause in the agreement as an affirmative defense. Judge Dimock found that Larus' refusal to arbitrate the issues as stated, constituted 'an express and intransigent repudiation of the obligation to arbitrate, acted upon by the opposing party' and held that Larus was in default within the meaning of §3, which authorizes a stay for arbitration 'providing the applicant for the stay is not in default in proceeding with such arbitration.' He therefore denied the stay and struck the defense."

Lane, supra, 243 F.2d at 366.

The Court of Appeals held that Larus' unjustified refusal to arbitrate was sufficient to constitute such a repudiation of the obligation to arbitrate as to amount to

11

a waiver of the correlative right to insist on arbitration. 243 F.2d at 367. The same is true here. There was a dispute with respect to plaintiff Maskaev's next fight. According to the WBC, all parties, the WBC included, were required to submit this dispute for resolution pursuant to Article 5. Maskaev immediately agreed to submit the dispute for resolution under Article 5, but Peter refused.

The WBC, whose rules these are, did nothing to ensure that the dispute would be submitted for determination as Rule 5 required or to resolve the dispute itself. Now, after Maskaev brought this court action in an effort to find a forum where he could get relief, the WBC and Peter insist on the mediation/arbitration remedy which they ignored before. As in Lane, the WBC and Peter's refusal to participate in Article 5 dispute resolution constitutes such a repudiation of their obligation to arbitrate as to amount to a waiver of their correlative right to insist on arbitration now.

Lane also addresses the moving defendants' contention that the relief they seek is mandatory. The relief is only mandatory under the Federal Arbitration Act (9 USCA §1 et seq.) if the applicant is not in default. Because the WBC and Peter have refused to comply with their arbitration obligation regarding this dispute, they are in default

within the meaning of §3 of the Act. 243 F.2d at 366. Accordingly, these defendants' motions to stay these proceedings or to dismiss the amended complaint in favor of arbitration should be denied.

Dated:    New York, New York
          August 16, 2007

                              Respectfully submitted,

                              PROFETA & EISENSTEIN
                              Attorneys for Plaintiffs

                              _____
                                   Jethro M. Eisenstein
                              A Member of the Firm
                              14 Wall Street, 22nd Floor
                              New York, New York 10005
                              (212) 577-6500