UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| OLEG MASKAEV and DENNIS RAPPAPORT PRODUCTIONS, LTD.,<br><br>      Plaintiffs,<br><br>-against-<br><br>WORLD BOXING COUNCIL, SAMUEL PETER, DUVA BOXING, LLC and DON KING PRODUCTIONS, INC.,<br><br>      Defendants. | Civil Action No. 07 CV 3147 (DAB) |

**WORLD BOXING COUNCIL'S
REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO DISMISS THE AMENDED COMPLAINT
OR STAY THE PROCEEDINGS PENDING MEDIATION**

L. Peter Parcher (LP 8096)
Jonathan Melber (JM 1000)
MANATT, PHELPS & PHILLIPS, LLP
7 Times Square
New York, NY 10036
(212) 790-4500

*Attorneys for Defendant World Boxing Council*

Defendant World Boxing Council ("WBC") respectfully submits this reply memorandum of law in support of its motion to dismiss the Amended Complaint or stay the proceedings pending mediation and, if necessary, mandatory binding arbitration.

## PRELIMINARY STATEMENT

From the inception of this litigation, Plaintiffs' assertions have been inaccurate and misleading. In their initial pleadings and at the TRO hearing, Plaintiffs accused the WBC of not following its own dispute-resolution rules—an accusation that has no merit. Not only did the WBC insist that the parties vying to fight Maskaev comply with the WBC's dispute-resolution procedures, the WBC *allowed that dispute to be submitted to arbitration with the Court of Arbitration for Sport*, in accordance with its rules, once the parties' settlement talks broke down. (The WBC's in-house counsel attended the TRO hearing by telephone, but was unable to correct the record because his connection was poor and actually cut out several times.)

Now that the WBC has formally moved to compel mediation in accordance with its rules, Plaintiffs repeat the same inaccuracies, making assertions that are disingenuous at best to justify their argument that the WBC waived its right to mediate. But the factors courts must consider when conducting a waiver analysis all point decisively in the other direction:

- *First*, barely any time passed from the inception of this litigation to WBC's request for mediation.

- *Second*, there has been no discovery and only a minimal exchange of pleadings in this litigation;

- *Third*—and most significantly—Plaintiffs have not demonstrated that they will suffer *any* prejudice whatsoever by submitting to mediation under the WBC rules. Indeed, the WBC has not taken advantage of pre-trial discovery unavailable in arbitration because there has been no discovery at all. Nor have Plaintiffs incurred excessive cost or delay because of WBC's motion to compel mediation.

And even if the WBC had waived its right to arbitrate the dispute over whether Klitschko or Peter would fight Maskaev, waiver in that dispute would not entail waiver in the dispute currently before this Court: a completely unrelated dispute over the purse-split between Maskaev and Peter.

The reason for the WBC's dispute-resolution procedures is straightforward: The WBC is a not-for-profit organization with limited funds. It cannot afford to be dragged into litigation every time a dispute arises in the contentious world of professional boxing. The WBC needs to have its disputes resolved more quickly and less expensively than is possible in litigation—even where, as here, it is fully confident in its conduct and in the ability of the Court to come to a fair and just decision. That is why the WBC's rules mandate that all disputes be submitted to the international Court of Arbitration for Sport, a specialized tribunal with specific expertise in sports-related issues. That is what the WBC has sought all along and it is what the Court should compel now.

## ADDITIONAL BACKGROUND

Missing from plaintiffs' version of events is the fact that the initial dispute over whether Klitschko or Peter would fight Maskaev—a dispute that has nothing to do with the current dispute before the Court—was submitted to arbitration on February 22, 2007. (Declaration of Robert J.B. Lenhardt dated August 23, 2007 ("Lenhardt Decl.") ¶ 3; Exhibit 1)

In that dispute, the WBC ordered the parties to participate in mediation on January 31, 2007. (Exhibit 5 to the Declaration of Dennis Rappaport dated April 19, 2007 ("Rappaport Decl.")) The parties eventually agreed to meet in a good-faith attempt to negotiate a settlement and obviate the need to enter formal dispute resolution. (Lenhardt Decl. ¶ 2) The WBC made it clear to Klitschko, Maskaev and Peter, however, that formal dispute resolution would be required should the settlement negotiations fail. (*See* Lenhardt Decl. ¶ 2; Rappaport Decl. Exs. 5, 8) The

parties met on February 7, 2007 but did not reach an agreement at that time. (*See* Lenhardt Decl. ¶ 2; Rappaport Decl. ¶ 13) The WBC rules therefore required formal dispute resolution and the matter was submitted to the Court of Arbitration for Sport (CAS) two weeks later (Lenhardt Decl. ¶ 3; Ex. 1) Klitschko's claim before CAS sought "to confirm the decision ... whereby the WBC authorized [Klitschko] to be the first Mandatory Challenger for the title of WBC Heavyweight Champion in the fight against Mr. Oleg Maskaev." (*Id.*) The WBC consented to CAS jurisdiction and began corresponding with CAS about scheduling. (Lenhardt Decl. ¶ 4; Exs. 2 and 3)

Klitschko later withdrew, effectively ending the dispute over who would fight Maskaev. (Rappaport Decl. ¶ 13) On May 25, 2007, Klitschko, Maskaev, Peter and the WBC entered into an agreement formally resolving that dispute, designating Klitschko the second mandatory challenger and ending the CAS arbitration. (Lenhardt Decl. ¶ 5; Ex. 4)

## ARGUMENT

As the WBC established in its opening brief, this litigation meets the two-part test for determining whether a particular dispute is arbitrable. (*See* Opening Br. 7-9) Plaintiffs do not debate this point. Nor do they contest the fact that they have repeatedly invoked the dispute-resolution provisions of the WBC rules in the course of events preceding this dispute. (*See id.* at 4)

Instead, Plaintiffs incorrectly assert that the WBC waived its right to insist on the dispute-resolution procedures mandated in its rules because it "did nothing to ensure that the dispute would be submitted for determination as Rule 5 required." (Opp. 10-12) Plaintiffs' argument fails for two independent reasons. *First*, "the dispute" Plaintiffs describe is an earlier dispute between Klitschko and Peter over who would fight Maskaev—a dispute that was fully resolved when Klitschko withdrew. That dispute has nothing to do with the claims currently before this

Court. *Second*, the WBC never acted in such a way as to waive its right to arbitrate the dispute over who would fight Maskaev. And Plaintiffs have made no showing whatsoever of prejudice, the most important element in the waiver analysis. There is no basis, therefore, for finding that the WBC waived its right to insist on its dispute-resolution procedures to resolve the current claims.

A.     **The Waiver Standard**[1]

The Second Circuit has long held that a party claiming that an opponent has waived its right to arbitration faces a "heavy burden." *See Jung v. Skadden, Arps, Slate, Meagher & Flom, LLP*, 434 F. Supp. 2d 211, 218 (S.D.N.Y. 2006) (quoting *Sweater Bee by Banff, Ltd. v. Manhattan Industries, Inc.*, 754 F.2d 457, 466 (2d Cir. 1985)). Because "there is a strong presumption in favor of arbitration . . . waiver of the right to arbitration is not to be lightly inferred." *Thyssen, Inc. v. Calypso Shipping Corp., S.A.*, 310 F.3d 102, 104-5 (2d Cir. 2002) (citation omitted). Thus, "any doubts concerning whether there has been a waiver are resolved in favor of arbitration." *F.D. Import & Export Corp. v. M/V REEFER SUN*, 248 F. Supp. 2d 240, 249 (S.D.N.Y. 2002) (quoting *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 25 (2d Cir. 1995)).

In determining whether a party has waived its right to arbitration, courts must consider:

> (1) the time elapsed from the commencement of litigation to the request for arbitration; (2) the amount of litigation (including exchanges of pleadings, any substantive motions, and discovery); and (3) proof of prejudice, including taking advantage of pre-trial discovery not available in arbitration, delay, and

---

[1] Plaintiffs cite several of the Court's comments, from the April 19, 2007 TRO hearing, regarding the significance of the WBC's alleged conduct with respect to the dispute over who would fight Maskaev. (Opp. 8-9) Initial rulings in a TRO or preliminary-injunction context, however, do not preclude "the subsequent, more thorough consideration of the merits that the preliminary injunction expressly envisions." *Goodheart Clothing Co., Inc. v. Laura Goodman Enters., Inc.*, 962 F.2d 268, 274 (2d Cir. 1992). *See also Don King Prods., Inc. v. Douglas*, 742 F.Supp. 741, 754 (S.D.N.Y. 1990) ("Findings made in a preliminary injunction proceeding therefore are seldom considered sufficiently final to be given preclusive effect."). Thus it is entirely proper for the Court to revisit its initial comments on the waiver issue, made without the benefit of full briefing from all interested parties.

expense.

*S & R Co. of Kingston v. Latona Trucking, Inc.*, 159 F.3d 80, 83 (2d Cir. 1998) (finding waiver because party actively participated in litigation for 15 months, including filing a counterclaim and conducting extensive discovery). Of these factors, "the key to a waiver analysis is prejudice." *Thyssen,* 310 F.3d at 105 (holding that waiver "may be found only when prejudice to the other party is demonstrated"). Indeed, after noting that "[t]his Circuit has refused to find waiver in a number of cases where delay in trial proceedings was not accompanied by substantial motion practice or discovery," the Second Circuit in *Thyssen* found no waiver—despite two years' worth of litigation—because the party opposing arbitration could not demonstrate prejudice. *Id.* at 105.

Even where a court finds waiver of an issue, "[w]aiver of one arbitrable claim through litigation does not result in waiver of other potentially arbitrable claims." *Stevenson v. Tyco Int'l (US) Inc. Supplemental Executive Ret. Plan*, No. 04-CV-4037 (KMK), 2006 WL 2827635, *12 (S.D.N.Y. Sept. 29, 2006) (emphasis added) (citing *Doctor's Assocs., Inc. v.. Distajo*, 107 F.3d 126, 133 (2d Cir. 1997)). Thus waiver with respect to one dispute does not entail waiver with respect to other disputes.

### B. The Purse Split Dispute Is A Separate Dispute

Plaintiffs meld two distinct disputes into a single claim "with respect to plaintiff Maskaev's next fight." (Opp. 12) There is too much glare on this gloss. The dispute in early 2007—the only dispute—was whether Klitschko or Peter would fight Maskaev first. *That* was the dispute the WBC directed the parties to mediate on January 31, 2007. (Rappaport Decl. Exh. 5) *That* was the dispute the parties attempted to settle on February 7, 2007, having agreed among themselves to try informal negotiations before submitting to formal dispute resolution. (Lenhardt Decl. ¶ 2; Rappaport Decl. ¶ 13) And *that* was the dispute the parties submitted to

arbitration when those informal negotiations failed. (Lenhardt Decl. ¶ 3; Ex. 1) Indeed, Klitschko's claim to CAS was "to confirm the decision ... whereby the WBC authorized [Klitschko] to be the first Mandatory Challenger for the title of WBC Heavyweight Champion in the fight against Mr. Oleg Maskaev." (Lenhardt Decl. ¶ 3) When Klitschko withdrew, leaving Peter as the only qualified challenger to fight Maskaev, that dispute was over.

The purse-split dispute currently before the Court first arose when Maskaev protested the WBC Board of Governors' vote for a purse split of 55%-45% between Maskaev and Peter. (*See* Opening Br. 5-6) This new dispute has nothing to do with Klitschko, who is no longer in the picture. It is not about who will fight Maskaev, it is about how much Maskaev and Peter will earn from their championship fight. This dispute is obviously, palpably unrelated to the fully resolved dispute over whether Klitschko or Peter would fight Maskaev.

Plaintiffs' waiver accusations relate only to the Klitschko-Peter dispute over who would fight Maskaev. (*See* Compl. ¶¶ 18-22; Opp. 6) That is the dispute Plaintiffs claim the WBC "did nothing to ensure . . . would be submitted for determination as Rule 5 required." (Opp. 12) Thus, even assuming the WBC waived its right to mediate the Klitschko-Peter dispute—and it did not—that waiver would have no bearing on the issue of whether the WBC waived its right to mediate the Maskaev-Peter purse-split dispute. *Accord, Doctor's Assocs.*, 107 F.3d at 133; *Stevenson*, 2006 WL 2827635 at *12.

None of Plaintiffs' waiver allegations relate to the current purse-split dispute. Therefore, there is no basis for finding waiver and the Court should compel mediation (and, if necessary, arbitration) of this dispute.

### C.  The WBC Never Waived Its Right To Arbitrate The Dispute Over Who Would Fight Maskaev

Plaintiffs' assertions about how the WBC conducted itself during the dispute over who would fight Maskaev are not only irrelevant to the issue of waiver, they are also inaccurate.

#### 1.  The WBC Acted Consistently With Its Dispute-Resolution Rules

Plaintiffs cite *one* case from this jurisdiction to support their waiver argument: a three-page opinion from 1957. (*See* Opp. 11) In that case, the defendant had repeatedly and explicitly refused to submit to arbitration during several months of correspondence with the plaintiff, only to move to compel arbitration once the plaintiff filed suit. *Lane, Ltd. v. Larus & Brother Co.*, 243 F.2d 364, 365-66 (2d Cir. 1957). By contrast, the WBC not only insisted from the beginning that the parties to the Klitschko-Peter dispute comply with its dispute-resolution procedures, it *consented to the dispute being submitted to the Court of Arbitration for Sport.* (*See* Lenhardt Decl. Ex. 2 (identifying who would be appearing in the CAS arbitration as the WBC's representatives))

In letters dated January 31 and February 1, 2007, the WBC explicitly invoked its dispute-resolution provisions. (*See* Rappaport Decl. Exs. 5, 8) The parties—including Maskaev—agreed among themselves to meet on February 7, 2007 to attempt informal negotiation and settle their dispute. (Lenhardt Decl. ¶ 2) There was thus no need at that time to insist on formal mediation, as the parties had come to agreement—at least for the time being—on how to go about resolving their dispute. When those talks failed, Klitschko filed a claim with CAS under the WBC's rules and all of the other parties—including the WBC—consented to CAS's jurisdiction. (Lenhardt Decl. ¶ 4; Exs. 2, 3)

It is thus disingenuous at best for Plaintiffs to accuse the WBC of refusing to abide by its dispute-resolution procedures. To the contrary, the WBC has demonstrated its willingness to arbitrate its disputes in accordance with those procedures.

### 2.  Plaintiffs Have Not Shown Any Prejudice

Plaintiffs do not address any of the specific factors courts must consider when determining whether a party has waived its right to arbitrate, *see S & R*, 159 F.3d at 83, none of which support finding waiver here. As for the first factor, only four months have passed "from the commencement of litigation to the request for arbitration."[2] Since there has been no discovery and this motion constitutes the WBC's first pleading in this matter, the second factor, "the amount of litigation," is minimal. Most importantly, Plaintiffs have not attempted to demonstrate the third factor of prejudice—the word "prejudice" does not even appear in their opposition papers.

The Second Circuit recognizes two kinds of prejudice: substantive, "such as when a party loses a motion on the merits and then attempts, in effect, to relitigate the issue by invoking arbitration," and "prejudice due to excessive cost and time delay." *Thyssen*, 310 F.3d at 105. Neither kind of prejudice is evident here, and Plaintiffs have asserted none. As the WBC has not made any other motions in this litigation, Plaintiffs cannot be said to suffer substantive prejudice from being compelled to mediate their claim. And Plaintiffs have not alleged excessive cost or time delay sufficient to constitute prejudice. "Absent evidence of excessive cost, the presumption in favor of arbitration cannot be overcome merely on the basis of the length of the delay." *Id* (finding no waiver despite a delay of two years). At the same time, "pretrial expense and delay—unfortunately inherent in litigation—without more, do not constitute prejudice

---

[2] The WBC first noted its dispute-resolution rules at the April 19, 2007 TRO hearing, although the waiver issue was not fully briefed or decided at that time, and in any event the TRO was denied. (*See* Transcript, Exhibit 3 to the Declaration of Jethro M. Eisenstein, dated August 16, 2007, at 12-14, 50)

sufficient to support a finding of waiver." *Jung*, 434 F. Supp. 2d at 217 (quoting *Leadertex*, 67 F.3d at 26, and finding no waiver). Submitting to mediation in accordance with the WBC dispute-resolution rules will not diminish, hinder or otherwise prejudice Plaintiffs' position with respect to the purse-split dispute before this Court.

Plaintiffs simply cannot demonstrate prejudice and therefore fail to meet their "heavy burden" in opposing the WBC's motion. *Jung*, 434 F. Supp. 2d at 218.

## CONCLUSION

For these reasons, and those explained in its moving brief, the World Boxing Council respectfully requests that the Court compel Plaintiffs to mediate their claims under WBC Rule 5.3 and, if mediation fails to resolve their claims, to arbitrate them before the Court of Arbitration for Sport under WBC Rule 5.4.

Dated: New York, New York.
     August 23, 2007

Respectfully submitted,

MANATT, PHELPS & PHILLIPS, LLP

By:   s/ L. Peter Parcher
    L. Peter Parcher (LP 8096)
    Jonathan Melber (JM 1000)

7 Times Square
New York, NY 10036
(212) 790-4500

*Attorneys for Defendant World Boxing Council*

80401700.4