UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
———————————————————— x

OLEG MASKAEV and DENNIS RAPPAPORT        :
PRODUCTIONS, LTD.

                                      :

                       Plaintiffs,

                                     :    No. 07 Civ. 3147 (DB)

            - against -

                                     :

WORLD BOXING COUNCIL, SAMUEL               :
PETER, DUVA BOXING, LLC and DON KING       :
PRODUCTIONS, INC.,

                                :

                      Defendants.

                                     :
———————————————————— x

## DECLARATION OF JEREMY A. COHEN

       I, Jeremy A. Cohen, hereby declare as follows:

       1.     I am a member of the bar of the State of New York and of this Court, and am an associate of the law firm of Kramer Levin Naftalis & Frankel LLP, attorneys for defendant Samuel Peter ("Peter"). I respectfully submit this declaration in further support of Peter's joinder with the motion of defendant World Boxing Council ("WBC") to dismiss the amended complaint or stay the proceedings pending mediation.

       2.     In this action, plaintiffs dispute the propriety of the "purse split" for the October 6, 2007 WBC Heavyweight Championship fight between plaintiff Oleg Maskaev ("Maskaev") and Peter. In their opposition to the WBC's motion, Maskaev and plaintiff Dennis Rappaport Productions, Ltd. ("DRP") incorrectly assert that (i) this dispute has been ongoing since late 2006, (ii) this is the same dispute as an earlier dispute over whether Peter or another boxer, Vitali Klitschko ("Vitali"), would have the right to fight Maskaev for the WBC

Heavyweight Championship, (iii) Peter refused to participate in the WBC's mandatory dispute resolution process in connection with that separate, earlier dispute, and (iv) the WBC allowed Peter to refuse to participate in their mandatory dispute resolution process in connection with that earlier dispute. Plaintiffs then wrongly harmonize these four faulty assertions to conclude that Peter and the WBC have waived the right to mediate this new and separate dispute over the purse split for the upcoming Maskaev-Peter WBC Heavyweight Championship fight.

3.     The purpose of this declaration is to provide the Court with relevant documents concerning the earlier dispute between Klitschko and Peter as well as the parties' submissions to the Court of Arbitration for Sport in Lausanne, Switzerland ("CAS") in that dispute. These documents demonstrate that the current dispute over the purse split for the Maskaev-Peter fight is different than the earlier dispute over who would get to fight Maskaev, and that, contrary to plaintiffs' assertions, the earlier dispute was in fact submitted to the CAS pursuant to WBC dispute resolution procedures.

**The Dispute Between Klitschko and Peter for the Right to Fight Maskaev**

4.     In September 2006, Peter defeated James Toney ("Toney") in a WBC-sanctioned "Elimination Bout," which earned Peter the right to fight Maskaev for the WBC Heavyweight Championship. (See Exh. A hereto: "Peter edges Toney for shot at WBC heavyweight title"). However, rather than sanction a Peter-Maskaev championship bout, the WBC required Peter to fight a rematch against Toney.

5.     While awaiting the winner of the Peter-Toney rematch, Maskaev received permission from the WBC to fight an interim bought against Peter Okhello ("Okhello"). The WBC's permission was conditioned on two things: (i) that the winner of the Maskaev-Okhello

would fight the winner of the Peter-Toney rematch as his next fight with no intervening bouts, and (ii) the Maskaev-Okhello fight had to take place by the end of 2006 so that the winner could fight the Peter-Toney rematch winner in early 2007. Dennis Rappaport, Maskaev's promoter and the principal of plaintiff DRP, confirmed this agreement in public statements on or about September 8, 2006. (See Exh. B hereto: "Maskaev's Next Opponent: Not Samuel Peter"; "Maskaev to make heavyweight defense in December").

6.    The WBC similarly confirmed this agreement in a press release prior to the Maskaev-Okhello fight in which the WBC stated that the Maskaev-Okhello "bout is also quite important because the winner must mandatorily defend in his next fight against the winner of the final elimination rematch between Samuel Peter of Nigeria and James Toney of US." (See Exh. C hereto: WBC Press Release dated December 4, 2006).

7.    On December 10, 2006, Maskaev defeated Okhello and on January 6, 2007, Peter defeated Toney again, setting up the agreed upon Maskaev-Peter WBC Heavyweight Championship bout. (See Exh. D hereto: "Maskaev keeps WBC title against Okhello"; "Peter crushes Toney, hopes shot at Maskaev is next").

8.    Notwithstanding their prior agreement, Maskaev and Rappaport sought to circumvent their obligation to grant Peter a title opportunity by first seeking to fight Wladimir Klitschko (See Exh. E hereto – E-mail from Dennis Rappaport to Jose Sulaiman dated December 21, 2006), and then, when that proved impossible, by seeking to fight Wladimir's brother, Vitali (See Exh. F hereto – E-mail from Dennis Rappaport to Jose Sulaiman dated January 29, 2007).[1]

---

[1] Due to Maskaev and Rappaport's interference, Peter's right to fight for the WBC Heavyweight Championship was delayed by many months, resulting in lost venue and TV opportunities. The

9.    In or about January 2007, Vitali asked the WBC to sanction a championship bout between him and Maskaev. (Complaint ¶ 16).

10.    On January 26, 2007, counsel for Peter wrote to the WBC to request that the WBC sanction Peter as Maskaev's next challenger. (See Exh. G hereto: Letter from Barry H. Berke to Jose Sulaiman dated January 26, 2007).

11.    On January 31, 2007, the WBC sent a memo to Maskaev, Peter, Vitali and their representatives in which the WBC confirmed that it had not issued an order with regard to who would fight Maskaev and directed that "the instant dispute be submitted to . . . mediation at this time." (See Exh. H hereto: Memorandum from Gabriel Penagaricano to Oleg Maskaev, Samuel Peter, Vitali Klitschko and Representatives dated January 31, 2007 ).

12.    WBC rules require mediation of "[a]ny unresolved claim, complaint or protest against the WBC." (See Exh. 1 to Declaration of Dennis Rappaport dated April 19, 2007 at § 5.3).

13.    On January 31, 2007, Peter, through counsel, stated that until the WBC sanctioned a challenger to fight Maskaev, there was nothing to mediate because absent a decision by the WBC unfavorable to Peter, Peter had no claim, complaint or protest against the WBC: "While we understand that the WBC would like to resolve this issue through mediation and/or arbitration, there is no decision for any party to challenge since the WBC has not yet issued an

---

resultant damages incurred by Peter will be the subject of Peter's counterclaims, whether in this action or in an arbitration.

order sanctioning a championship fight."[2] (See Exh. I hereto:  Letter from Barry H. Berke to Gabriel A. Penagaricano, Esq. dated January 31, 2007).

14.     On February 1, 2007, the WBC responded to Peter's February 1 letter and recognized Peter's disagreement with the WBC's position "that the compulsory mediation that the WBC has ordered pursuant to Section 5.3 of the WBC Rules and Regulations ('WBC Rules') is compulsory or required." (See Exh. J hereto:  Letter from Robert J.B. Lenhardt to Barry H. Berke dated February 1, 2007).  Nevertheless, in the spirit of good faith and in order to determine whether the parties could achieve an amicable resolution short of litigation or arbitration, Peter and the WBC – *as well as Maskaev and DRP* – agreed to meet in New York to discuss a possible settlement.   Far from waiving the mandatory mediation provisions of the WBC Rules by agreeing to this meeting, the WBC's participation was expressly made "without prejudice to the WBC's position that the mediation is compulsory."  (*Id.*).   Peter agreed that the settlement meeting would not result in a waiver of the WBC's position that mediation was required.

15.     Peter repeated these positions in a letter dated February 2, 2007, in which he stated that mediation was not required under WBC rules "because the WBC has yet to make a decision concerning the sanctioning of the next heavyweight title fight" but agreed that the parties' planned settlement meeting would be "without prejudice to [the WBC's] position that mediation is required." (See Exh. K hereto:  Letter from Barry H. Berke to Robert J.B. Lenhardt, Esq. dated February 2, 2007).

---

[2] Had the WBC sanctioned Peter as the next challenger at that point, there would have been no action taken by Peter, whether in court or in arbitration.

16.    In short, the WBC took the position that mediation was required, Peter took the position that mediation was not required, but the issue was never addressed by a court or an arbitrator because instead of pressing the issue and rushing to court or arbitration, the parties attempted to negotiate an amicable settlement.

17.    On that basis, the parties met on February 7, 2007 to discuss a settlement, but no settlement was achieved immediately.

18.    On February 22, 2007, pursuant to WBC Rule 5.4, Vitali commenced an arbitration before the CAS seeking a declaration that he would be Maskaev's next challenger (the "CAS Arbitration").    (See Exh. L hereto:    Request for Arbitration in the Matter of Vitali Klitschko, World Boxing Council (WBC), Mr. Oleg Maskaev, Mr. Samuel Peter, CAS No. 2007/O/1224).

19.    Peter appeared in the CAS Arbitration and filed an answer and counterclaims.  (See Exh. M hereto:  Statement of Answer and Counterclaims of Respondent Samuel Peter in the Matter of Klitschko v. World Boxing Council, et al. CAS No. 2007/O/1224).

20.    By March 2, 2007, the WBC still had not sanctioned a challenger to fight Maskaev for the WBC Heavyweight Championship.  In a letter sent that day, counsel for Peter once more requested that the WBC sanction Peter as Maskaev's next challenger.   Peter acknowledged the WBC's continuing position that "any claim by Mr. Peter against the WBC for breach of its agreement would be subject to arbitration under the dispute resolution provisions of the WBC rules." (See Exh. N hereto:  Letter from Barry H. Berke to Robert J.B. Lenhardt, Esq. and Gabriel A. Penagaricano, Esq. dated March 2, 2007).   Peter further expressed his

- 6 -

disagreement with the WBC's view and indicated that he would file a lawsuit if not named the challenger. (*Id.*)

      21.    Peter's lawsuit was averted when, on April 9, 2007, the WBC officially sanctioned Peter as the challenger to Maskaev.[3] (See Exh. O hereto:  World Boxing Council press release dated April 9, 2007)

      22.    On May 25, 2007, Vitali, Peter, Maskaev and the WBC entered into an agreement resolving the CAS Arbitration, bringing the dispute over whether Peter or Vitali would fight Maskaev next to a close.  (See Exh. P hereto:  Agreement Withdrawing CAS Arbitration and Dismissing Claims and Counterclaims with Prejudice).

**The Purse Split Dispute is Separate from the Dispute Over Maskaev's Next Opponent**

      23.    On April 24, 2007, with the issue of who would be Maskaev's next opponent already decided by the WBC, the WBC announced that the purse for the Maskaev-Peter fight would be split 55%-45% in Maskaev's favor pursuant to WBC rules.  (See Exh. Q hereto:  World Boxing Council e-mail announcement dated April 24, 2007).

      24.    In this action, plaintiffs have asked the Court to modify the purse split announced by the WBC on April 24, 2007.

      25.    In their opposition to the WBC's motion, plaintiffs assert that this action concerns "the same dispute about who is to face Maskaev in the mandatory heavyweight bout,

---

[3] Presumably, in light of the WBC's reservation of the right to do so, had Peter commenced litigation, the WBC's first response would have been to seek a stay or dismissal in favor of arbitration under WBC rules.

and on what terms, that has been playing out since the end of 2006." (Plaintiffs' Opposition Brief ("Pl. Opp.") at 7).

26.    This action is not a dispute about who is to face Maskaev. Nor has it been "playing out" since 2006 – the purse split at issue in this case was announced on April 24, 2007. Thus, this dispute could not have been "playing out" prior to that date.

27.    Plaintiffs know that this action concerns a different dispute than the earlier dispute concerning the identity of Maskaev's next opponent. In the agreement settling the CAS Arbitration over who would fight Maskaev, plaintiffs requested that the agreement specifically preserve their claims in this action because they concern a separate dispute. (See Exh. P at ¶ 7).

28.    In any event, there is a critical difference between the prior issue of whether Vitali or Peter would get to fight Maskaev and the current issue of the purse split for the Maskaev-Peter fight. With regard to the issue of who would get to fight Maskaev, Peter declined to mediate because the WBC had not made a decision that was subject to mediation. With regard to the issue of the purse split, there is no dispute that the WBC *has* made a decision to split the purse 55%-45%. The only issue in this action is the propriety of that WBC decision. Thus, there is clearly a WBC decision at stake, which is ripe for mediation.

## Peter Participated in the Earlier CAS Arbitration Under WBC Rules

29.    Ultimately, whether the issues now raised by Maskaev are the same as those raised in the CAS arbitration is of no consequence because the earlier issue of who would fight Maskaev next *was submitted to arbitration, and Peter participated in that arbitration.*

- 8 -

30.    Plaintiffs' opposition is predicated on the demonstrably incorrect assertions that "[T]he WBC and Peter's refusal to participate in Article 5 dispute resolution constitutes such a repudiation of their obligation to arbitrate as to amount to a waiver of their correlative right to insist on arbitration now" and "Because the WBC and Peter have refused to comply with their arbitration obligation regarding this dispute, they are in default within the meaning of § 3 of the [Federal Arbitration] Act." (Pl. Opp. at 12-13).

31.    As set forth in paragraphs 18, 19 and 22, above, even if the issue of who would fight Maskaev next is considered part of the current dispute, that issue was raised and resolved in the CAS Arbitration. Peter participated in the CAS Arbitration, as did the WBC and Maskaev, who are parties to the agreement settling the CAS Arbitration. (See Exhs. L, M and P hereto).

32.    Plaintiffs' assertions, on which their entire opposition is predicated, that Peter and/or the WBC failed to arbitrate the earlier dispute (whether or not it is part of the current dispute) cannot be reconciled with the indisputable fact that Peter *did* arbitrate the earlier dispute.

33.    Accordingly, because the earlier dispute was resolved pursuant to WBC dispute resolution requirements, there has been no waiver of those requirements

**Plaintiffs' Actions Have Damaged Peter**

34.    As set forth in Paragraph 8, above, the initial dispute over whether Peter would be deprived of his right to fight for the WBC Heavyweight Championship was precipitated, in large part, by the bad faith actions of Maskaev and DRP.

- 9 -

35.    The actions of Maskaev and DRP resulted in a lengthy and costly delay of Peter's ability to pursue his livelihood by fighting for the prestigious and valuable WBC Heavyweight Championship.  Peter suffered substantial financial damage as a result of plaintiffs' actions.

36.    By this action, plaintiffs have compounded the damage to Peter by forcing him to incur substantial attorneys' fees.

37.    If mediation fails and the parties are forced to arbitrate, under CAS Rules, if Peter prevails in the arbitration, he will at least be able to recoup his attorneys' fees, which is an important difference between litigating this dispute and resolving it pursuant to WBC dispute resolution procedures.  (See Exh. R hereto:  Statutes of the Bodies Working for the Settlement of Sports-Related Disputes at R 64.5).

## Conclusion

38.    For the reasons set forth above, plaintiffs' complaint should be dismissed or stayed pending mandatory mediation.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: August 23, 2007
        New York, New York

                                        _____/s/ Jeremy A. Cohen_____
                                                Jeremy A. Cohen

KL3 2610204.1