# EXHIBIT M

**KRAMER LEVIN NAFTALIS & FRANKEL** LLP

BARRY H. BERKE
PARTNER
PHONE 212-715-7560
FAX 212-715-7660
BBERKE@KRAMERLEVIN.COM

May 2, 2007

VIA COURIER

Ms. Andrea Zimmermann
Court of Arbitration for Sport
Château de Béthusy
Avenue de Beaumont 2
CH-1012 Lausanne
Switzerland

> Re:    Klitschko v. World Boxing Council, et al.
>        CAS No. 2007/O/1224

Dear Ms. Zimmermann:

Respondent Samuel Peter ("Peter"), by his attorneys Kramer Levin Naftalis & Frankel LLP, respectfully submits this statement of answer and counterclaims pursuant to Rule 39 of the Special Provisions Applicable to the Ordinary Arbitration Procedure of the Court of Arbitration for Sport (the "CAS").

Background

In September 2006, Peter became the official mandatory challenger for the World Boxing Council ("WBC") Heavyweight Championship by defeating James Toney ("Toney") in an "elimination" bout. Instead of sanctioning Peter as the mandatory challenger to current champion Respondent Oleg Maskaev ("Maskaev") as required by WBC rules, the WBC ordered Peter to fight a rematch with Toney. In order to induce Peter to accept the rematch, the WBC promised Peter that if he defeated Toney again, he would be Maskaev's next challenger for the WBC Heavyweight Championship. Peter accepted the rematch in reliance on the WBC's promise.

On January 6, 2007, Peter defeated Toney in the rematch and earned the right to fight Maskaev for the WBC Heavyweight Championship pursuant to the agreement between the WBC and Peter. Maskaev had previously acknowledged this agreement and agreed with the WBC that after a December 2006 fight against Peter Okhello, his next fight would be against Peter if he defeated Toney again.

In or about mid-January 2007, after Peter had already earned the right to fight Maskaev in Maskaev's next defense of his WBC Heavyweight Championship, claimant Vitali Klitschko ("Klitschko") announced that he was coming out of retirement and wished to fight Maskaev for the WBC Heavyweight Championship.

**KRAMER LEVIN NAFTALIS & FRANKEL** LLP

Ms. Andrea Zimmermann
May 2, 2007
Page 2

In an attempt to induce Peter to "step aside" so that Klitschko could fight Maskaev before Peter did, Klitschko and his agents repeatedly made false statements to Peter, including that Klitschko would pay Peter millions of dollars to allow Klitschko to fight Maskaev when Klitschko had no such money to pay Peter (in fact, Klitschko provided Peter with what turned out to be a fraudulent "wire transfer confirmation" purporting to show Klitschko's ability to pay Peter). Klitschko also repeatedly stated that he was willing to sign an agreement setting forth the terms of the "step aside," exchanged numerous drafts of agreements purporting to embody the "step aside," but then refused to sign any agreement after months of negotiation. As a result of Klitschko's serial misrepresentations in conjunction with these negotiations, Peter's opportunity to fight for the prestigious WBC Heavyweight Championship was delayed by many months, causing Peter to lose out on lucrative television and venue opportunities for his title fight, while incurring substantial attorneys fees in the process.

As set forth below, Klitschko's claim in this arbitration is without merit because i) Klitschko has already waived his claim to fight Maskaev before Peter and admitted that he no longer wishes to pursue this arbitration. Nevertheless, Klitschko and his counsel have bizarrely refused to withdraw their Request for Arbitration; ii) even if Klitschko had not disavowed his own claims, such claims are not ripe because Klitschko has failed to comply with the appropriate administrative prerequisites for arbitration under WBC rules; and iii) in any event, Klitschko was not entitled to "jump the line" to Peter's detriment because the WBC had already promised Peter that he would be Maskaev's next challenger. In addition, as set forth below, Klitschko's aborted bad faith attempt to "jump the line" and his misrepresentations in conjunction with the "step aside" negotiatios caused a damaging delay in Peter's opportunity to fight for the WBC Heavyweight Championship. These fraudulent and willful actions resulted in lost opportunities for Peter with regard to television dates and venues for his championship fight against Maskaev, and resulted in millions of dollars in damages to Peter, which Peter is entitled to recover from Klitschko.

<u>Statement of Defenses</u>

<u>Klitschko Has Waived His Claims for the Requested Relief</u>

In his Request for Arbitration, Klitschko seeks a determination that he, not Peter, "is the next authorized challenger of Oleg Maskaev for the title of WBC Heavyweight Champion." (Request for Arbitration at 2). However, on April 9, 2007, the WBC ordered that Peter, not Klitschko, would be the next authorized challenger to Maskaev. The WBC's order came three days *after* Klitschko disavowed any claim to be the next authorized challenger to Maskaev, and further disavowed this arbitration. In an April 6, 2007 interview with Kommersant, an online Russian news outlet, Klitschko stated that he had given up his bid to fight Maskaev before Peter and further stated:

**KRAMER LEVIN NAFTALIS & FRANKEL** LLP

Ms. Andrea Zimmermann
May 2, 2007
Page 3

I had an opportunity to go to the Court of Arbitration for Sport in Laussanne, but I'm not going to use it. (Exhibit A, "Klitschko Gives Up Maskaev Fight," April 6, 2007).

Klitschko confirmed his position in a release also dated April 6 on his own proprietary website in which he stated:

I do not desire to turn to sports arbitration court since this case could drag on and the fight would get postponed for some time. I don't want to block any fights in heavyweight division, or deprive fans of much anticipated events. I want to give Oleg Maskaev and Samuel Peter a chance to face each other as soon as possible, so that I can face the winner. (Exhibit B, "I Am Giving Oleg Maskaev and Samuel Peter a Chance to Fight Each Other, so I Can Face the Winner as Soon as Possible").[1]

Only after Klitschko made these statements did the WBC sanction Peter as the next challenger to Maskaev. Klitschko's Request for Arbitration is thus moot, and Klitschko – by his own admissions – has waived the very claim he has asserted in this arbitration. Accordingly, the arbitration should be dismissed and costs and fees should be imposed against Klitschko for requiring Peter to respond to claims he admits he has waived.

<u>Klitschko Has Not Complied with WBC Administrative Preconditions to Arbitration</u>

Under WBC dispute resolution provisions (attached as Exhibit 1 to Klitschko's Request for Arbitration), before commencing an arbitration, a party must first mediate pursuant to WBC Rule 5.3. As Klitschko admits in his Request for Arbitration, no such mediation has taken place with regard to the claims asserted by Klitschko (see Request for Arbitration at ¶¶ 16, 18).

In fact, in February 2007, Peter declined to participate in a proposed mediation under the WBC rules because WBC dispute resolution provisions require mediation as a prerequisite to arbitration concerning any *decision* made by the WBC. As of February 2007, the WBC had *not* made any decision that was subject to challenge in an arbitration *so there was nothing to mediate*.

Indeed, as of February 16, 2007 – the date of Klitschko's Request for Arbitration – the WBC still had not made any decision with regard to the next WBC heavyweight challenger, so

---

[1] Around the same time, Klitschko's manager, Shelly Finkel, admitted that Klitschko was actually *unable* to fight Maskaev next because Klitschko's trainer had been hospitalized and needed additional recovery time before he would be ready to train Klitschko.

KRAMER LEVIN NAFTALIS & FRANKEL LLP

Ms. Andrea Zimmermann
May 2, 2007
Page 4

Klitschko's Request for Arbitration was premature because there was no decision by the WBC at that point that could have been the subject of arbitration. Only on April 9, 2007 did the WBC make a decision, sanctioning Peter as Maskaev's next challenger. As set forth above, this was three days *after* Klitschko had stated that he would not seek to fight Maskaev next and would not seek to arbitrate the issue. If, despite his admissions to the contrary and waiver of his claim, Klitschko now wishes to arbitrate the WBC's April 9 order, he must first proceed through the WBC's dispute resolution channels as a necessary pre-condition to arbitration. Accordingly, the CAS is without authority to hear this arbitration.

### Klitschko's Claim Fails on the Merits

Peter twice fought and won "elimination" bouts that earned him the right to fight Maskaev under WBC rules. In addition, even apart from WBC rules, the WBC promised Peter that if he won his rematch with Toney, he would be Maskaev's next challenger, with no interim bouts by Maskaev before their title fight. This arrangement is reflected in admissions by the WBC, as well as in statements by representatives of Maskaev and Peter. Klitschko nevertheless sought to "jump the line" after Peter had already been installed as Maskaev's next challenger on the grounds that he is the "Champion Emeritus" and entitled to an automatic title fight whenever he chose. Nothing in the WBC rules provides for a "Champion Emeritus" to fight for a championship at any time, without regard to the rights of other fighters. Whether under WBC rules or under the WBC's agreement with Peter, Peter had (and has) the right to fight Maskaev next for the WBC Heavyweight Championship and nothing in Klitschko's Request for Arbitration supports a different result. Accordingly, Klitschko's claim should be rejected.

### Statement of Counterclaims

The day after he defeated Toney in their second "elimination" bout, Peter sought to negotiate the terms of a championship fight against Maskaev. Almost immediately thereafter, Klitschko and his representatives began to interfere with those negotiations by attempting to negotiate a fight between Klitschko and Maskaev. Compounding matters, Klitschko induced Peter to embark on a months-long negotiation of a "step aside" agreement by fraudulently and willfully claiming he had an agreement in place to fight Maskaev and that he was able to pay millions to Peter as a "step aside" fee. In fact, Klitschko had neither an agreement with Maskaev, nor money for a "step aside" fee. Nevertheless, Klitschko repeatedly assured Peter that he had the money to pay Peter and even provided Peter with what turned out to be a fraudulent "wire transfer confirmation" purporting to show Klitschko's ability to pay Peter.

Klitschko also repeatedly stated his intention to enter into an agreement with Peter reflecting the terms of the "step aside." Over the span of several months, Klitschko, through counsel, provided Peter with written and oral assurances that Klitschko intended and was able to perform a "step aside" agreement with Peter. Ultimately, Peter accepted and executed a "step aside" proposal from Klitschko. Klitschko's promoter, K2 Promotions, also executed the

KRAMER LEVIN NAFTALIS & FRANKEL LLP

Ms. Andrea Zimmermann
May 2, 2007
Page 5

agreement. Nevertheless, after inducing Peter to accept this agreement, and even after his own promoter had signed the agreement, Klitschko disavowed it, refusing to sign the very agreement he had offered to Peter. Peter was forced to expend substantial amounts to pay for attorneys fees in connection with the several months of negotiations, which Klitschko unilaterally abandoned in bad faith at the eleventh hour.

By inducing Peter to negotiate for based on the false claims that he had funds to pay a "step aside" fee and that he intended to sign a "step aside" agreement, Klitschko caused Peter to delay by many months his pursuit of the prestigious WBC Heavyweight Championship. As a consequence, Peter lost lucrative television and venue rights opportunities for his championship fight with Maskaev. The value of these lost opportunities will be established during the arbitration but is conservatively estimated to be at least $5,000,000 (U.S.). In addition, by fraudulently and willfully inducing Peter to participate in these negotiations, Klitschko caused Peter to incur tens of thousands of dollars in otherwise unnecessary legal fees, which Peter will also be entitled to recover.

For these reasons, Peter seeks an order dismissing the Request for Arbitration in its entirety and awarding Peter damages in an amount to be determined but in no event less than $5,000,000 (U.S.).

<u>Procedural Matters</u>

Finally, we briefly address certain procedural matters with regard to the Request for Arbitration. First, we object to the claimant's purported selection of Mr. Lucas Anderes as an arbitrator, which is improper under CAS Rule 41.1. Pursuant to Rule 41.1, "If there are three or more parties with divergent interests, both arbitrators shall be appointed in accordance with the agreement between the parties. In the absence of such agreement, the arbitrators shall be appointed by the President of the Division in accordance with Article R40.2." Here, there are four parties with divergent interests and no agreements between the parties concerning selection of arbitrators. Accordingly, we request that the President of the Division appoint the arbitrators pursuant to CAS Rule 40.2, without regard to claimant's purported selection.

**KRAMER LEVIN NAFTALIS & FRANKEL** LLP

Ms. Andrea Zimmermann
May 2, 2007
Page 6


  Second, pursuant to CAS Rule 28, we request that the arbitration be conducted in New York. Respondents Peter and Maskaev both reside in the United States, as does claimant Klitschko, who regularly appears in New York for promotional purposes. Respondent WBC maintains a regular business presence in New York as well. In addition, the promoters for Peter, Maskaev and Klitschko, all of whom are likely to be witnesses, are all located in the greater New York area. The managers for all three fighters are also located in the United States. Thus, for the convenience of all parties, the United States in general, and New York in particular, is the most convenient location for this arbitration.

       Respectfully submitted,

       Barry H. Berke
       Jeremy A. Cohen

Enclosures

A

## News

Apr. 06, 2007

E-mail | Home



photo.kommersant.ru

Photo: AFP

# Klitschko Gives Up Maskaev Fight

Former WBC heavyweight champ Vitali Klitschko has given up his bid to fight for his old title in June, allowing top challenger Samuel Peter to take on Oleg Maskaev. Talks over the long-anticipated Klitschko vs. Maskaev bout broke down because of "exorbitant financial demands" of the Russian titleholder and the Nigerian contender, the Ukrainian boxer told Kommersant Thursday.

Vitali Klitschko announced Thursday in an exclusive interview with Kommersant he has given up plans to fight Russian titleholder Oleg Maskaev. "I've been in this business for 11 years. I've never had such tough talks even when we were organizing my fights against outstanding boxers like Lenox Lewis," the Ukrainian said. "In this case ambitions of the parties [Maskaev and Peter's managers] are so unbelievably high that there doesn't seem to be a way to satisfy them."

Vitali Klitschko says his managers were trying to find a compromise but unbelievably high that there are no ways to satisfy them. Ambitions of Maskaev and Peter's managers are so Vitali Klitschko said, commenting his decision to give up his bid to fight for his old title in June.

Vitali Klitschko says his managers were trying to find a compromise but Maskaev and Peter's teams were constantly changing their demands. "I had an opportunity to go to the Court of Arbitration for Sport in Laussanne, but I'm not going to use it."

Vitali Klitschko left boxing in 2005 after a knee injury. The Ukrainian retired undefeated, keeping the WBC honorary championship which would enable him to get the next shot at the champion if he decided to return. However, by the time Klitschko announced his comeback, the WBC had already picked the next contender, Nigeria's Samuel Peter. The challenger and his team said they would insist on a championship fight with Maskaev. The WBC then left it to the boxers and their promoters to settle the dispute.

The Ukrainian says Oleg Maskaev asked for $5 million while Samuel Peter wanted to receive $3 million to step aside and let Klitschko sign. These sums are twice as much as any prize money the two boxers have ever earned, according to Vitali Klitschko.

The World Boxing Council has already given Oleg Maskaev and Samuel Peter three weeks to negotiate conditions of the upcoming bout. If the boxers fail to reach agreement, the WBC will announce a tender to pick the promoter.

In any case, Klitschko is guaranteed to fight the winner of Maskaev vs. Peter later this year.

www.kommersant.com

## Other Photos






// Archives

## News

Russia Observes May Day without Incident
Tajikistan Plans for Hydroelectricity
Ramzan Kadyrov Made Honorary Mayor of ...
State Duma's Lawmakers Found Saw-Cut
Traces. ...
Britain's Parliament to Investigate MI5's ...

## Readers' Opinions

You are welcome to share your opinion on the issue.

// Join the forum

**9 МАЯ**
Все Русское ТВ Бесплатно! eTVnet поздравляет с Праздником!
eTVnet.ca

**Cotto Boxing Tickets**
Miguel Cotto vs. Zab Judah Tickets. Check Our Prices. Save 10% Or More.
www.TicketLiquidator.com

**Tapout-Official Site**
Official-Site for Tapout gear. View our selection and buy today!
www.myaface.com

**Boxing Club**
View Photo Profiles. Join Free. Find Local Singles into Boxing.
Fitness-Singles.com

Ads by Google

**B**

< Wladimir <                                               < Vitali <

DIE NEUE KOMÖDIE VON TIL SCHWEIGER

# KEIN OHR HASEN

EXKLUSIVE INFOS
ZU DEN DREHARBEITEN
HIER KLICKEN!

ru    de    ua    << Home >>    << News >>    << World boxing rankings >>    << RINGSIDE >>

**News**

**Archives**



● Vitali Klitschko: " I am giving Oleg Maskaev and Samuel Peter a chance to fight each other, so I can face the winner as soon as possible."

Recently, mass media has been overflowing with various interpretations of the situation, which developed as a result of negotiations between Vitali Klitschko, Oleg Maskaev and Samuel Peter. Two parties have already laid out their reasons for the termination of negotiations, making it impossible to carry out the fight that was supposed to take place on June 2nd between Vitali Klitschko and Oleg Maskaev, who holds the title of world champion under WBC.

Individuals from each party, insist that they were not at fault for the ruined negotiations, blaming others for the break in the process. However, judging by the way events played out surrounding the negotiations, it becomes evident that there were some unsolved issues. In order to find out what really took place that lead to the end of negotiations between Vitali and Oleg, we turned to the WBC Champion Emeritus - Vitali Klitschko.

"My fight with Oleg Maskaev, that many fans all over the world have been waiting for, unfortunately will not take place. The main reason that negotiations terminated was due to unreasonable ambitions of both Samuel Peter and Oleg Maskaev, which made it impossible to find a compromise that satisfied all of the parties taking part in negotiations. These negotiations dragged on for three months.

SEARCH OF SITE

Search

- Outline of Website
- History of Boxing
- Press Archive
- News Subscribe
- Wallpaper
- Photo Gallery
- Your Forecast
- Forum
- Chat
- Partners
- Contact
- Online-Shop
- Add to favorite
- Question for Klitschko

http://www.klitschko.com/news/index.php3?read=200704001&part=en

The Official Site of Klitschko Brothers



On Wednesday, April 4th, we had received a message, in which one of the main partners of the negotiation process – HBO, informed us that with only eight weeks remaining before the fight, it would be impossible for them to produce a live transmission of the fight. Therefore HBO made the final decision, announcing that it would be impossible for me to face Oleg Maskaev on June 2nd.

Statements by Oleg's promoter, Dennis Rappaport, that supposedly Vitali Klitschko had refused to carry out a fight against Maskaev, are absurd. I would like to point out once again that the only reason I decided to continue my sports career was to retake the championship title that I previously held, as well as to fulfill our dream of having two brothers as heavyweight champions of the world.

My team gave their utmost and was ready to make any reasonable compromise so that this fight would take place as soon as possible. However, due to reasons outside of our control, carrying out this fight has become impossible. I do not desire to turn to sports arbitration court since this case could drag on and the fight would get postponed for some time. I don't want to block any fights in heavyweight division, or deprive fans of much anticipated events. I want to give Oleg Maskaev and Samuel Peter a chance to face each other as soon as possible, so that I can face the winner. The WBC has already spoken to Maskaev and Peter's promoters about organization of their fight. I hope that Oleg's fight against Samuel would take place in near future, as this would allow me to face the winner in the fall of this year."

**25. April 2007**
● The time has begun for a rematch!

**24. April 2007**
● Tickets for the fight Klitschko vs Brewster from 25th April 2007 available!

**21. April 2007**
● Wladimir Klitschko and 80th Annual Golden Gloves Final

**20. April 2007**
● Wladimir Klitschko: "I got married...» Part II

**18. April 2007**
● Vitali Klitschko: "I have a good feeling about this"

**16. April 2007**
● Vitali Klitschko: " Euro 2012 is only a step away for Ukraine"

**15. April 2007**
● Wladimir Klitschko: "I got married... However, for now, only on the film set"

**14. April 2007**
● Wladimir Klitschko: "Nikolay Valuev doesn't interest me without a belt"

**06. April 2007**
● Vitali Klitschko: " I am giving Oleg Maskaev and Samuel Peter a chance to fight each

The Official Site of Klitschko Brothers

other, so I can face the winner as soon as possible."

**13. March 2007**
❂ Wladimir Klitschko: "I was prepared to end this fight with a single punch!"

**12. March 2007**
❂ New! Photo gallery. Postfight press-conference

**12. March 2007**
❂ New! Photo gallery. After the fight

**12. March 2007**
❂ New! Photo gallery. Weighing

**11. March 2007**
❂ Press conference after the fight Wladimir Klitschko vs. Ray Austin

**10. March 2007**
❂ Wladimir Klitschko vs. Ray Austin: TKO after 1:27 in round 2

Archives    | 2006 | 2005 | 2004 | 2003 | 2002 | 2001 | 2000

© www.klitschko.com, 2003-2006







# EXHIBIT N

# KRAMER LEVIN NAFTALIS & FRANKEL LLP

BARRY H. BERKE
PARTNER
PHONE 212-715-7560
FAX 212-715-7660
BBERKE@KRAMERLEVIN.COM

March 2, 2007

<u>BY ELECTRONIC MAIL</u>

Robert J.B. Lenhardt, Esq.
WBC Legal Counsellor
1717 Main Street, Suite 900
Dallas, Texas 75201

Gabriel A. Peñagarícano, Esq.
Secretary General
World Boxing Council
P.O. Box 71449
San Juan, Puerto Rico 00936-8549

      Re:   <u>Samuel Peter</u>

Dear Messrs. Lenhardt and Peñagarícano:

      We write on behalf of our client, Samuel Peter, concerning his mandatory World Boxing Council heavyweight championship fight against Oleg Maskaev.

      In September 2006, the WBC promised Mr. Peter that if he defeated James Toney in a rematch of their WBC-sanctioned elimination bout, then the WBC would sanction Mr. Peter as the immediate challenger for the heavyweight championship. The WBC further promised that the WBC heavyweight champion would have to fight Mr. Peter in his <u>next fight</u>. Mr. Peter, who had already defeated Mr. Toney once and thus earned the right to an immediate championship fight, agreed and accepted the extraordinary rematch with Mr. Toney based on the WBC's promises and representations.

      The WBC confirmed its agreement with Mr. Peter in a statement on its website on December 4, 2006, which stated that the winner of a December 10, 2006 championship fight between Mr. Maskaev and Peter Okhello "must mandatorily defend in his next fight against the winner of the final elimination rematch between Samuel Peter . . . and James Toney." Neither Mr. Maskaev nor Mr. Okhello objected to the WBC's agreement with Mr. Peter or the statement by the WBC concerning the next championship fight. To the contrary, the WBC sanctioned the Maskaev-Okhello bout at Mr. Maskaev's request but subject to the following conditions to which Mr. Maskaev specifically agreed:  1) the winner must fight the winner of the Peter-Toney rematch in his next fight; and 2) the bout must take place before the end of 2006 so that the winner would be ready to face the Peter-Toney rematch winner without delay.

Robert J.B. Lenhardt, Esq.
Gabriel A. Peñagarícano, Esq.
March 2, 2007
Page 2

On January 6, 2007, Mr. Peter defeated Mr. Toney again. According to the WBC, Mr. Peter's victory "validated" his status as the "official undisputable challenger" to Mr. Maskaev. Mr. Peter's representatives requested that the WBC order Mr. Maskaev to begin immediately negotiating the terms of a championship bout between Mr. Peter and Mr. Maskaev.

Although Mr. Peter has sought to commence negotiations for his hard-earned championship opportunity, the WBC has thus far failed to perform its part of its bargain with Mr. Peter and has not yet ordered Mr. Maskaev to negotiate with Mr. Peter. Instead, contrary to its agreement with Mr. Peter, the WBC has indicated that it is considering breaching its obligation to Mr. Peter, either by sanctioning someone other than Mr. Peter as Mr. Maskaev's next challenger or simply refusing to sanction Mr. Peter or anyone else as Mr. Maskaev's next challenger.

At the request of the WBC, Mr. Peter and his representatives agreed to meet with representatives of Maskaev and Vitali Klitschko to see if the parties could reach an agreement. Despite Mr. Peter's good faith efforts, these discussions have concluded without the parties reaching any agreement because, among other reasons, the proposals from Mr. Maskaev and Mr. Klitschko have been conditional and constantly changing (to Mr. Peter's detriment). As a result, the time has come for the WBC to comply with its prior agreement, representations and promises by sanctioning Mr. Peter as Mr. Maskaev's next opponent for the WBC heavyweight championship, and ordering Mr. Maskaev to begin negotiations for such a fight immediately.

Each day that the WBC delays in sanctioning Mr. Peter as Mr. Maskaev's next challenger and ordering Mr. Maskaev to negotiate with Mr. Peter causes harm to Mr. Peter, including, *inter alia*, interfering with his ability to pursue his livelihood, denying him the opportunity to obtain what the WBC has described as "the greatest title in all of sports: WBC Heavyweight Champion of the World," affecting his training schedule, and impacting his share of promotional opportunities and potential television revenues.

As you are aware, we have tried in good faith to work with the WBC to see that Mr. Peter is granted the heavyweight championship bout that he earned and was promised by the WBC. Despite Mr. Peter's good faith efforts, the WBC still has not sanctioned Mr. Peter as Mr. Maskaev's next challenger and has not ordered Mr. Maskaev to begin negotiating the terms of a championship fight with Mr. Peter. Mr. Peter can afford no further delay by the WBC.

We understand that the WBC believes that any claim by Mr. Peter against the WBC for breach of its agreement would be subject to arbitration under the dispute resolution provisions of the WBC rules. We disagree. However, even if WBC dispute resolution provisions applied to the WBC's agreement with Mr. Peter, which we dispute, such rules apply only to claims arising from, "[a]ny dispute arising directly or indirectly on the occasion of or in connection with a WBC sanctioned bout or any decision made by the WBC." (WBC Rule 5.4). Since the WBC has failed to sanction <u>any</u> bout or make <u>any</u> decision concerning Mr. Maskaev's

Robert J.B. Lenhardt, Esq.
Gabriel A. Peñagarícano, Esq.
March 2, 2007
Page 3

next opponent, arbitration is not mandated even under WBC rules. That is, even if WBC dispute resolution provisions applied, they can only be triggered once the WBC has made the decision to sanction <u>someone</u> as Mr. Maskaev's next challenger. Accordingly, the onus remains on the WBC to sanction a challenger for the WBC heavyweight championship.

We therefore repeat our previous requests that the WBC sanction Mr. Peter as the next challenger for Mr. Maskaev's WBC heavyweight championship belt. If the WBC fails to do so by 5:00 p.m. eastern standard time, Tuesday, March 6, 2007, Mr. Peter will commence legal action against the WBC to preserve his rights.

This letter is without prejudice to Mr. Peter's rights and remedies in law and equity, all of which are specifically reserved.

Sincerely,

Barry H. Berke

cc: Mark A. Kirkorksy, Esq.
    Counsel for Oleg Maskaev

KL3 2575751.1

# EXHIBIT
# O

REDACTED

-----Original Message-----
From: suljos@gmail.com
To: JPBRISTER@aol.com; fightnews1@yahoo.com.cn; amflores@wbcboxing.com;
Punchingbilly@aol.com; Duvaboxing@aol.com; boxingmgr@aol.com; dking@donking.com;
FIGHTFRED@aol.com; SF464@aol.com; djamison@donking.com; vitali@klitschko.com;
DRAPPBOXING@aol.com; mlcmarley@aol.com; gpenagaricano@wbcboxing.com;
msulaiman@wbcboxing.com; attylen@yahoo.com; cowboy@sombrero.com; bob.logist@skynet.be;
boxebu@rdn.it; vcota@prodigy.net.mx
Sent: Mon, 9 Apr 2007 12:49 PM

# WORLD BOXING COUNCIL
# PRESS RELEASE ----- APRIL 9, 2007

The World Boxing Council = WBC = officially announces today that the proposed fight between the WBC World heavy weight champion Oleg Maskaev and the former WBC world champion and current WBC Champion Emeritus Vitali Klitschko will not take place at this time, as the representatives of Maskaev , Klitschko and Samuel Peter did not reach an agreement to that effect.

Therefore, the WBC IS ORDERING AN IMMEDIATE MANDATORY DEFENSE OF Oleg Maskaev, USA-Russia , against official challenger Samuel Peter, from Nigeria, with a purse offer to be held on April 20th , if the free negotiations starting today, between the parties are not

successful.  Additionally, the WBC is also ordering that Vitali Klitschko shall be the next mandatory challenger in the heavyweight division.

The WBC offered every possible opportunity and all types of support for all the parties reaching an alternate agreement that would satisfy them all, but to no avail.

As previously noted , the WBC has found itself placed between competing claims for the position of next mandatory challenger in the division.  With this action , the WBC has overseen the resolution of this controversy , and look forward to these great upcoming bouts for the WBC Heavyweight Championship of the World. Signed, José Sulaimán , president.

---

AOL now offers free email to everyone. Find out more about what's free from AOL at **AOL.com**.

# EXHIBIT
# P

## AGREEMENT WITHDRAWING CAS ARBITRATION AND DISMISSING CLAIMS AND COUNTERCLAIMS WITH PREJUDICE

WHEREAS, on or about February 16, 2007, Vitali Klitschko commenced an arbitration with index number 2007/O/1224 (the "Arbitration") before the Court for Arbitration for Sport ("CAS") against the World Boxing Council ("WBC"), Samuel Peter ("Peter") and Oleg Maskaev ("Maskaev") asserting a claim that he was entitled to be the challenger in the next WBC Heavyweight Title fight (the "Claim");

WHEREAS, on or about May 2, 2007, Peter responded to the Claim in the Arbitration and asserted counterclaims against Klitschko (the "Counterclaims");

WHEREAS, the parties desire to dismiss with prejudice the Claim and Counterclaims asserted in the Arbitration on the terms set forth herein.

NOW, THEREFORE, IT IS HEREBY AGREED BY THE PARTIES AS FOLLOWS:

1.    Klitschko hereby dismisses his Claim against all parties to the Arbitration with prejudice.

2.    Peter hereby dismisses his Counterclaims against Klitschko in the Arbitration with prejudice.

3.    Each party to this Agreement shall bear his own fees and costs, including without limitation, attorney fees.

4.    This Agreement may be signed in counterparts and by facsimile transmission.

5.    The individuals executing this agreement acknowledge that they have the authority to execute this agreement on behalf of their clients.

6.    Nothing in this Agreement waives or is intended to waive any affirmative defense, claim, cross-claim, counterclaim or third-party claim that Peter may have against any party other than Klitschko arising from or relating to the lawsuit titled *Maskaev et al. v. World Boxing Council et al.*, Index No. 07 CV 3147, currently pending in the United States District Court for the Southern District of New York.

7.    Nothing in this Agreement waives or is intended to waive any claim or affirmative defense to any counterclaim that Maskaev or his representatives may have which in any arises from or relates to the lawsuit titled *Maskaev et al. v. World Boxing Council et al.*, Index No. 07 CV 3147, currently pending in the United States District Court for the Southern District of New York.

8.    Klitschko shall deliver a copy of this signed agreement to the CAS via overnight delivery service within 3 business days of all parties' execution hereof.

Dated: New York, New York
       May 25, 2007

THELEN REID BROWN RAYSMAN
& STEINER
Attorneys for Vitali Klitschko
875 Third Avenue
New York, New York 10022
(212) 603-2000

By: Bruce J. Zabarauskas    5/29/07


KRAMER LEVIN NAFTALIS &
FRANKEL LLP
Attorneys for Samuel Peter
1177 Avenue of the Americas
New York, New York 10036
(212) 715-9100

By: Jeremy A. Cohen


Mark A. Kirkorsky, P.C.
Attorneys for Oleg Maskaev
4025 South McClintock Drive, Suite 208
Tempe, Arizona 85282
(480) 603-6088

By: Mark A. Kirkorsky


WORLD BOXING COUNCIL

By: _____

# EXHIBIT
# Q

**Cohen, Jeremy**

---

**From:**     Robert Lenhardt [attylen@yahoo.com]
**Sent:**      Tuesday, April 24, 2007 2:24 PM
**To:**         Cohen, Jeremy
**Subject:** Fw: WBC PURSE OFFER HW DIVISION

Apparently this was handled without the lawyers, so here is the order.

Best regards.

Bob Lenhardt

- Robert J.B. Lenhardt
  WBC General Counsel
----- Forwarded Message ----
From: Lic. Mauricio Sulaiman <mscmb@controlesgraficos.com.mx>
To: "BOX-DKP-JAIMISON, DANA" <djamison@donking.com>; WBC-AAA SUALAIMAN PAPA
<suljos@gmail.com>
Cc: WBC-BRISTER JOHN <jpbrister@aol.com>; BOX-MASKAEV-KESCH FRED
<fightfred@aol.com>; BOX-RAPPAPORT DENNNIS <DRAPPBOXING@aol.com>; BOX-GOTZEV
IVAYLO <iggboxing@aol.com>; BOX-DUVA DINO <Duvaboxing@aol.com>; BOX-DKP-KING
DON <dking@donking.com>; BOX-DKP-GOODMAN BOBBY <bgoodman@donking.com>; BOX-
Kirkorsky Mark A. <mark@maklaw.net>
Sent: Tuesday, April 24, 2007 12:52:38 PM
Subject: WBC PURSE OFFER HW DIVISION

# World Boxing Council
# Consejo Mundial de Boxeo



DEAR FRIENDS

THE WBC OFFICIALLY ANNOUNCES THAT CONSIDERING THE REASONS EXPRESSED BY THE PARTIES ,
THE PURSE OFFER FOR THE MANDATORY DEFENSE BETWEEN WBC CHAMPION OLEG MASKAEV AND
MANDATORY CHALLENGER SAMUEL PETER WILL BE HELD IN NEW YORK CITY ON MAY 4th AT NOON
AT THE AFFINIA MANHATTAN HOTEL , LOCATED AT 31st AND 7th AVENUNE .THE PHONE NUMBER IS
212 5631800 AND THE FAX NUMBER IS
212 6438028.

4/24/2007

THE WBC CONFIRMS THAT THE SPLIT WILL BE 55% FOR THE CHAMPION AND 45% FOR THE CHALLENGER WITH THE WINNING PROMOTER HAVING THE COMMITMENT TO DEPOSIT 10% OF THE AMOUNT OF THE BID WITHIN THE FOLLOWING 10 CALENDAR DAYS ( RULE 2.8 ) ,INFORM LOCATION AND DATE OF THE FIGHT WITHIN THE FOLLOWING 15 CALENDAR DAYS ( RULE 2.10 )AND PRESENT THE SIGNED CONTRACTS BY BOTH BOXERS WITHIN THE FOLLOWING 21 CALENDAR DAYS ( RULE 2.10 )

THIS LETTER SUPERCEDES ALL PRIOR COMMUNICATTIONS IN REGARDS TO THIS SPECIFIC PURSE OFFER CEREMONY.

PLEASE ACCEP MY WARMEST REGARDS.

**Jose Sulaiman**
**President**
**52-555-7150309 Of.**
**52-555-4164015 Cel.**
**956-346-4081 Usa Cel**

4/24/2007

# EXHIBIT
# R

## Statutes of the Bodies Working for the Settlement of Sports-related Disputes[*]

**A      Joint Dispositions**

S1      In order to settle sports-related disputes through arbitration and mediation, two bodies are hereby created :

- **the International Council of Arbitration for Sport (ICAS) and**
- **the Court of Arbitration for Sport (CAS).**

The disputes to which a federation, association or other sports-related body is party are a matter for arbitration in the sense of this Code, only insofar as the statutes or regulations of the said sports-related bodies or a specific agreement so provide.

The seat of the ICAS and the CAS is established in Lausanne, Switzerland.

S2      The task of the ICAS is to facilitate the settlement of sports-related disputes through arbitration or meditation and to safeguard the independence of the CAS and the rights of the parties. To this end, it looks after the administration and financing of the CAS.

S3      The CAS, which has a list of arbitrators, procures the arbitral resolution of disputes arising within the field of sport through the intermediary of arbitration provided by Panels composed of one or three arbitrators.

It comprises an Ordinary Arbitration Division and an Appeals Arbitration Division.

The CAS has a list of mediators in order to procure the resolution of sports-related disputes through mediation. The mediation procedure is governed by separate rules.

**B      The International Council of Arbitration for Sport (ICAS)**

**1      Composition**

S4      The ICAS is composed of twenty members, namely high-level jurists appointed in the following manner :

---

[*] NOTE : In this Code, the masculine gender used in relation to any physical person shall, unless there is a specific provision to the contrary, be understood as including the feminine gender.

**E**    **Interpretation**

R63    A party may apply to the CAS for the interpretation of an award issued in an ordinary or appeals arbitration, whenever the operative part of the award is unclear, incomplete, ambiguous or whenever its components are self-contradictory or contrary to the reasons, or whenever the award contains clerical mistakes or a miscalculation of figures.

When an application for interpretation is filed, the President of the relevant Division shall review whether there is ground for interpretation. If so, he shall submit the request to the Panel which has rendered the award for interpretation. Any Panel members who are unable to act shall be replaced in accordance with Article R36. The Panel shall rule on the request within one month following the submission of the request to the Panel.

**F**    **Costs of the Arbitration Proceedings**

R64    In general

R64.1    Upon filing of the request/statement of appeal, the Claimant shall pay a minimum Court Office fee of Swiss francs 500.—, without which the CAS shall not proceed. The CAS shall in any event keep this fee. The Panel shall take it into account when assessing the final amount of the fees.

R64.2    Upon formation of the Panel, the Court Office shall fix, subject to later changes, the amount and the method of payment of the advance of costs. The filing of a counterclaim or a new claim shall result in the calculation of separate advances.

To determine the amount to be paid in advance, the Court Office shall fix an estimate of the costs of arbitration, which shall be borne by the parties in accordance with Article R64.4. The advance shall be paid in equal shares by the Claimant and the Respondent. If a party fails to pay its share, the other may substitute for it ; in case of non-payment, the request/appeal shall be deemed withdrawn; this provision shall also applies to any counterclaim.

R64.3    Each party shall advance the cost of its own witnesses, experts and interpreters.

If the Panel appoints an expert or an interpreter or orders the examination of a witness, it shall issue directions with respect to an advance of costs, if appropriate.

R64.4   At the end of the proceedings, the Court Office shall determine the final amount of the cost of arbitration, which shall include the CAS Court Office fee, the administrative costs of the CAS calculated in accordance with the CAS scale, the costs and fees of the arbitrators calculated in accordance with the CAS fee scale, a contribution towards the expenses of the CAS, and the costs of witnesses, experts and interpreters. The final account of the arbitration costs may either be included in the award or communicated separately to the parties.

R64.5   The arbitral award shall determine which party shall bear the arbitration costs or in which proportion the parties shall share them. As a general rule, the award shall grant the prevailing party a contribution towards its legal fees and other expenses incurred in connection with the proceedings and, in particular, the costs of witnesses and interpreters. When granting such contribution, the Panel shall take into account the outcome of the proceedings, as well as the conduct and the financial resources of the parties.

R65   Disciplinary cases of an international nature ruled in appeal

R65.1   Subject to Articles R65.2 and R65.4, the proceedings shall be free.

The fees and costs of the arbitrators, calculated in accordance with the CAS fee scale, together with the costs of the CAS are borne by the CAS.

R65.2   Upon submission of the statement of appeal, the Appellant shall pay a minimum Court Office fee of Swiss francs 500.— without which the CAS shall not proceed and the appeal shall be deemed withdrawn. The CAS shall in any event keep this fee.

R65.3   The costs of the parties, witnesses, experts and interpreters shall be advanced by the parties. In the award, the Panel shall decide which party shall bear them or in what proportion the parties shall share them, taking into account the outcome of the proceedings, as well as the conduct and financial resources of the parties.

R65.4   If all circumstances so warrant, the President of the Appeals Arbitration Division may decide to apply Articles R64.4 and R64.5, 1st sentence, to an appeals arbitration, either ex officio or upon request of the President of the Panel.

R66   Consultation Proceedings

The Court Office shall determine, after consultation with the person requesting the opinion, to what extent and upon what terms such person shall contribute towards the costs of the consultation procedure. The Court Office may ask the applicant to advance the costs before the notification of the advisory opinion.

Index No. 07 Civ. 3147 (DB)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

OLEG MASKAEV and DENNIS RAPPAPORT
PRODUCTIONS, LTD.

Plaintiffs,

- against -

WORLD BOXING COUNCIL, SAMUEL PETER,
DUVA BOXING, LLC and DON KING
PRODUCTIONS, INC.,

Defendants

# DECLARATION OF JEREMY A. COHEN

KRAMER LEVIN NAFTALIS & FRANKEL LLP
*Attorneys for Defendant Samuel Peter*

1177 Avenue of the Americas, New York, New York 10036
(212) 715-9100

*All communications should be referred to:*
Barry H. Berke, Esq.
Jeremy A. Cohen, Esq.

KL3 2611197 1