UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
OLEG MASKAEV and DENNIS RAPPAPORT
PRODUCTIONS, LTD.,

```
┌────────────────────────────────┐
│ USDC SDNY                       │
│ DOCUMENT                        │
│ ELECTRONICALLY FILED            │
│ DOC #:                          │
│ DATE FILED: 9/24/2007           │
└────────────────────────────────┘
```

                    Plaintiffs,

        -against-                          07 Civ. 3147 (DAB)

                                           MEMORANDUM & ORDER

WORLD BOXING COUNCIL, SAMUEL PETER,
DUVA BOXING, LLC and DON KING
PRODUCTIONS, INC.,

                    Defendants.
------------------------------------X
DEBORAH A. BATTS, United States District Judge.

    Plaintiffs Oleg Maskaev ("Maskaev") and Dennis Rappaport

Productions, Ltd. ("DRP") seek injunctive relief and damages

against Defendants World Boxing Council ("WBC"), Samuel Peter

("Peter"), Duva Boxing, LLC ("Duva") and Don King Productions,

Inc. ("DKP") in a dispute arising from a WBC heavyweight

championship title match between Maskaev and Peter.  The Parties

have engaged in several rounds of wrangling and maneuvering in

the run-up to the main event.  Although most of the Parties'

disputes have so far been resolved out-of-court, a controversy

remains before this Court concerning WBC's awarding of the purse

bid for the fight to Peter's promoter DKP and WBC's decision

regarding the percentage of the proceeds of the purse bid that

each boxer will receive.  Plaintiffs Maskaev and DRP -- DRP is

Maskaev's promoter -- principally contend that WBC breached its

own rules in awarding the purse bid to DKP instead of to DRP and
by ordering that Maskaev, the defending WBC champion, will
receive only 55% of the purse bid proceeds instead of the 70%
typically awarded to reigning WBC champions.  Defendant WBC in
turn insists that its rules, binding on all Parties, require
Maskaev and DRP to submit their disputes to mediation and, if
necessary, to arbitration before the Court of Arbitration for
Sport.

     The Defendants jointly move, pursuant to the Federal
Arbitration Act, to dismiss Plaintiffs' Amended Complaint or for
an order staying the action pending mediation, and if that fails,
arbitration.  Plaintiffs oppose the motion on the ground that WBC
has effectively waived the compulsory mediation/arbitration
provisions of its rules by its conduct during an earlier dispute
that the Parties ultimately resolved on their own.  For the
reasons set forth below, Defendants' Motion to Stay these
proceedings pending mediation and, if necessary, arbitration, is
GRANTED.  Defendants' Motion to Dismiss the Amended Complaint is,
accordingly, DENIED.


                          BACKGROUND

     Plaintiff Maskaev is the current WBC heavyweight champion.
(Amended Complaint ¶ 9.)  He won that title on August 12, 2006.
(Id.)  Prior to Maskaev, Vitali Klitschko ("Klitschko") had held

                                2

the WBC heavyweight championship.  (<u>Id.</u> ¶ 13.)  Klitschko,

however, retired for medical reasons on November 8, 2005.  (<u>Id.</u>)

On December 20, 2005, WBC named Klitschko its "Heavyweight

Champion Emeritus" and promised him that "if he ever returned to

boxing, he would be designated the immediate official challenger

against the current champion and would therefore be the opponent

in the heavyweight champion's next mandatory defense."  (<u>Id.</u> ¶

14.)  In December 2006, Klitschko advised WBC that "he had been

cleared by his doctors to fight, and intended to return to the

ring."  (<u>Id.</u> ¶ 15.)  He asked WBC to honor "the commitment it had

made when it named him 'Champion Emeritus' a year earlier, to

make him the designated official (mandatory) challenger."  (<u>Id.</u>)

     According to Plaintiffs, several events then occurred in

early January 2007 that precipitated the instant dispute between

the Parties.  (<u>Id.</u> ¶¶ 16-18.)  First, "on January 6, 2007

defendant Peter defeated James Toney in a WBC heavyweight

qualifying bout."  (<u>Id.</u> ¶ 16.)  Peter thereby became the "WBC

heavyweight number one contender, eligible under [WBC rules] for

the next mandatory defense" against the reigning WBC champion

Maskaev.  (<u>Id.</u>)  Within a few days of Peter's win, however, on

January 12, 2007, "Vitali Klitschko officially informed the WBC

that he was ready to fight, and requested that the WBC recognize

him as Maskaev's next opponent."  (<u>Id.</u>)  Plaintiffs allege that

under WBC rules, Maskaev's mandatory defense "did not come due

until August 2007, and he was entitled to make a voluntary defense against an opponent like Vitali Klitschko." (Id. ¶ 15.) Nevertheless, shortly after Klitschko's announcement, "[i]n the week of January 15, 2007," WBC's Board of Governors decided to authorize a "bout between Maskaev and Klitschko as Maskaev's mandatory defense." (Id. ¶ 17.)

Peter allegedly threatened legal action in response to WBC's decision to sanction a mandatory Maskaev-Klitschko fight. (Id.) As a result of the threatened litigation, WBC allegedly never publicly announced its decision regarding the Maskaev-Klitschko fight. (Id.) Instead, on January 31, 2007, to resolve the dispute of whether Peter or Klitschko should fight Maskaev first, WBC directed Klitschko, Peter, Maskaev and their respective representatives to participate in compulsory mediation pursuant to WBC Rule 5. (Id. ¶ 18.)

WBC Rule 5.1 provides that boxers and promoters who participate in WBC activities and events agree that any disputes or claims they have under the WBC constitution or WBC rules agree to submit to the organization's dispute resolution procedures. (Lenhardt Decl. dated July 30, 2007, Ex. 2. [hereinafter "Lenhardt Decl."].) WBC Rule 5.2 provides that any disputes under the WBC constitution or rules must initially be presented to "the WBC for consideration by the President and the appropriate Committee, and if appropriate, the Board of

Governors."  (Id.)  Under Rule 5.2, "[u]pon reception of the

claim, dispute or controversy, the President, in his discretion"

may choose to "attempt to resolve the controversy" or else refer

the matter to a "Grievance and Appeals Committee" or to "the

Board of Governors."  (Id.)  Rule 5.2 also provides that once

"administrative procedures" are fully complied with, WBC Rules

5.3 and 5.4 may be invoked.

WBC Rule 5.3 provides for "Compulsory Mediation":

> Any unresolved claim, controversy or dispute against
> the WBC, must be submitted to non-binding mediation . .
> . within thirty (30) days after exhaustion of the
> administrative procedures outlined in Rule 5.2.

(Id.)  WBC Rule 5.4 provides for exclusive mandatory arbitration

before the Court of Arbitration for Sport in cases where parties

have failed to resolve a dispute pursuant to the Rules 5.2 and

5.3.  (Id.)  Finally, WBC Rule 5.5 provides that "[a]ny person

having a claim against the WBC expressly waives all remedies and

courses of action other than those provided for in this Rule 5."

(Id.)  Plaintiffs Maskaev and DRP have both signed agreements

confirming that they agree to be bound exclusively by WBC Rule

5's dispute resolution procedures.  (Id. at Exs. 1 & 2.)

Plaintiffs allege that while they agreed to abide by WBC's

January 31, 2007 order to submit to mediation the dispute over

whether Klitschko or Peter would fight Maskaev for the

heavyweight title, Peter and his promoter DKP refused to

5

participate in mediation under WBC Rule 5.  (Amended Complaint ¶

18.)  DRP urged WBC to sanction immediately a Maskaev-Klitschko

bout in order to penalize Peter for rejecting compulsory

mediation in violation of WBC Rule 5.  (Id. ¶ 19.)  According to

Plaintiff, on February 5, 2007, "counsel for the WBC wrote to all

parties, reiterating the view of the WBC that representatives of

Peter had rejected the compulsory mediation required by WBC Rule

5."  (Id.)

Defendant Peter, however, presents copies of correspondence

between the Parties that shows that Peter had not unequivocally

rejected compulsory mediation and that, in any event, the Parties

agreed to attempt to resolve the dispute without the need for

mediation.  According to Peter, WBC never officially issued an

order regarding whether Klitschko or Peter would fight Maskaev

first.  (Cohen Decl. ¶ 11.)  WBC's January 31, 2007 order to the

Parties to comply with Rule 5 states that:

> On the one hand, the WBC believes that it may accept
> the proposed Maskaev versus Vitali Klitschko [sic]
> under its rules and regulations and the circumstances
> as a great bout for boxing, and on the other, fully
> recognizes that Samuel Peter won not only the
> elimination bout against James Toney, but also the
> rematch.  The WBC is thus between competing claims.

(Id. Ex. H at 1.)  Peter's counsel wrote to WBC on January 31,

2007 stating his position that "[w]hile we understand that the

WBC would like to resolve this issue through mediation and/or

arbitration, there is no decision for any party to challenge

since the WBC has not yet issued an order sanctioning a championship fight."  (Id. Ex. I at 2.)

Despite their disagreement on whether mediation was compulsory, representatives of Maskaev, Klitschko and Peter met on February 7, 2007 to attempt to settle the underlying dispute. (Id. ¶¶ 16-17; Amended Complaint ¶ 20.)  Peter agreed to participate in the settlement negotiations expressly on the understanding that WBC reserved its right to insist on compulsory mediation under its Rules.  (Id. Ex. K.)  The meeting did not result in an agreement.  (Amended Complaint ¶ 20.)  However, "[t]hroughout February and March, 2007, there were continued efforts to work out a deal that would accommodate the interests of Peter, Maskaev and Klitschko, but they were unsuccessful." (Id.)

On February 22, 2007, "pursuant to WBC Rule 5.4, [Klitschko] commenced an arbitration before the [Court of Arbitration for Sport] seeking a declaration that he would be Maskaev's next challenger."  (Cohen Decl. ¶ 18, Ex. L.)  Shortly after commencing arbitration proceedings, Klitschko withdrew from the controversy.  (Amended Complaint ¶ 21.)  Thus, on April 6, 2007, "DRP's attorney notified Peter's attorney and the WBC that Maskaev was ready to start direct discussions with Peter for the upcoming championship bout."  (Id.)  On August 9, 2007, WBC officially ordered a mandatory title bout between Maskaev and

7

Peter.  (Id. ¶ 23; Cohen Decl. ¶ 21.)  WBC also announced that a purse bid auction would be held in Mexico City on April 20, 2007, if the Maskaev and Peter camps could not reach voluntary agreement on the terms for the bout.  (Id.)  On May 2, 2007, Peter filed an answer and counterclaims in the arbitration proceedings before the Court of Arbitration for Sport.  (Cohen Decl. ¶ 19, Ex. M.)

With the dispute of who would first fight Maskaev resolved, a new controversy arose regarding the purse bid split for the Maskaev-Peter bout.  According to Plaintiff, "[o]n April 16, 2007, at the request of DKP, the WBC ordered that champion Maskaev would receive only 55% of the proceeds of the purse bid, and challenger Peter would receive 45% of the proceeds of the purse bid, despite there being no precedent for such a modification except in the case of a former champion with extraordinary marquee value."  (Amended Complaint ¶ 25.)  On April 19, 2007, Plaintiffs sought a temporary restraining order from this Court enjoining WBC from proceeding with the purse bid auction scheduled for April 20, 2007.  After a hearing, the Court denied Plaintiffs' application.  On April 24, 2007, WBC adjourned the purse bid auction to May 4, 2007 and officially confirmed that 55%-45% split of the proceeds of the purse bid.  (Cohen Decl. ¶ 23.)

The purse bid was eventually held on May 7, 2007.  (Amended
Complaint ¶ 27.)  Plaintiffs allege that WBC violated its own
rules by ultimately declaring on June 19, 2007 that DKP had won
the bid, instead of DRP.  (Id. ¶¶ 28-38.)  Meanwhile, on May 25,
2007, the Parties entered into an agreement whereby the
arbitration proceeding before the Court of Arbitration for Sport
commended by Klitschko was withdrawn and dismissed with
prejudice.  (Cohen Decl. Ex. P.)


                            DISCUSSION

     Defendants jointly move, pursuant to the Federal Arbitration
Act ("FAA"), to dismiss the Amended Complaint or to stay the
action pending non-binding mediation and, if necessary, binding
arbitration under WBC Rules.  Defendants also appear to seek an
order compelling Plaintiffs to submit to arbitration under WBC
Rule 5.

     The Parties do not dispute that they are bound by the
dispute resolution mechanisms contained in WBC Rule 5.  Rule 5.2
provides that the Parties' disputes and claims under the WBC
constitution or WBC rules shall first be submitted to the WBC
President for resolution.  If the dispute is thus not resolved,
Rule 5.3 provides for non-binding mediation.  Should mediation
also fail to resolve the dispute, Rule 5.4 provides for binding

arbitration before the Court of Arbitration for Sport, located in Switzerland.  (Lenhardt Decl. Ex. 2.)  The Parties so far have attempted to settle their disputes informally and have not yet sought non-binding mediation under Rule 5.3.  For that reason, it remains to be seen whether any Party will reject arbitration of the claims Plaintiffs raise in their Amended Complaint under Rule 5.4.  It is thus premature for the Court to consider a motion to compel arbitration since the FAA provides that such an order shall issue only upon petition of "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" and where the Court is satisfied that "the making of the agreement for arbitration . . . is not in issue."[1]  9 U.S.C. § 4.

---

[1]     The Court notes that any eventual arbitration of the Parties' disputes would likely be held in Switzerland, the location of the Court of Arbitration for Sport.  The FAA provides that any order compelling arbitration issued by a district court "shall be within the district in which the petition for an order directing such arbitration is filed."  9 U.S.C. § 4.  Courts in this district have, however, observed in this context that:

> [w]here a federal court lacks authority pursuant to 9 U.S.C. § 4 to compel arbitration outside its district, the court may still determine that the dispute nonetheless remains "referable to arbitration" elsewhere, if a forum is designated, and must then order a stay [pursuant to § 3] instead, thereby leaving the parties free to pursue their contractual rights and remedies in the appropriate venue.

DaPuzzo v. Globalvest Mgmnt. Co., L.P., 263 F. Supp.2d 714, 739 (S.D.N.Y. 2003); see also Provident Bank v. Kabas, 141 F. Supp.2d 310, 315 (E.D.N.Y. 2001) ("Where an agreement to arbitrate specifies a venue outside of the district in which the petition is filed, no order to compel may be entered; only a stay is

The FAA, however, also permits litigants to seek a stay of an action to allow parties to submit their disputes to arbitration:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.  Plaintiffs oppose Defendants' motion to stay the proceedings pending the outcome of mediation or arbitration under WBC Rule 5, arguing that "[b]ecause the WBC and Peter have refused to comply with their arbitration obligation regarding this dispute, they are in default" within the meaning of the FAA and thus have effectively waived their rights under WBC Rule 5. (Pls.' Opp. at 12-13.)

Courts consider three factors in determining whether a party has waived its right to arbitration:  "(1) the time elapsed from when litigation was commenced until the request for arbitration; (2) the amount of litigation to date, including motion practice and discovery; and (3) proof of prejudice."  Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc., 252 F.3d 218, 229 (2d

available").

Cir. 2001) (citing <u>Leadertex, Inc. v. Morganton Dyeing &</u>

<u>Finishing Corp.</u>, 67 F.3d 20, 25 (2d Cir. 1995), <u>cert. denied</u>, 534

U.S. 1020 (2001). "An inquiry into whether an arbitration right

has been waived is factually specific and not susceptible to

bright line rules." <u>Cotton v. Slone</u>, 4 F.3d 176, 179 (2d Cir.

1993). "Generally, waiver is more likely to be found the longer

the litigation goes on, the more a party avails itself of the

opportunity to litigate, and the more that party's litigation

results in prejudice to the opposing party." <u>Thyssen, Inc. v.</u>

<u>Calypso Shipping Corp., S.A., A.M.</u>, 310 F.3d 102, 105 (2d Cir.

2002).

Plaintiffs argue that Peter waived his right to insist on

arbitration under WBC Rule 5 because he had refused to comply

with that same rule in the dispute over whether he or Klitschko

would next fight Maskaev. WBC, according to Plaintiffs, also

waived its right to arbitrate the instant dispute because it

allegedly failed to penalize Peter for refusing to abide by Rule

5 during the earlier dispute. It is clear, however, that Peter

did in fact abide by WBC Rule 5 during the course of the earlier

dispute regarding who would fight Maskaev. At WBC's invitation,

representatives of Peter, Maskaev and Klitschko met on February

7, 2007 to attempt to settle the dispute. Peter also ultimately

participated in the arbitration proceeding begun by Klitschko

before the Court of Arbitration for Sport. Additionally, as

12

Defendants point out, the earlier dispute was resolved without resort to the more formal dispute resolution mechanisms provided for in WBC Rules 5.3 and 5.4.  The earlier dispute over who would fight Maskaev is also clearly distinct from the instant dispute regarding the split of the proceeds of the purse bid and the manner in which the bid was awarded to DKP.

WBC also correctly notes that "[p]laintiffs do not address any of the specific factors courts must consider when determining whether a party has waived its right to arbitrate."  (WBC's Reply at 8.)  This action is still at its earliest stages; Defendants filed the instant motion within one month of Plaintiffs' filing of the Amended Complaint.  Plaintiffs also make no showing that they would be prejudiced by the granting of Defendants' motion. The Court thus finds that Plaintiffs' argument that Defendants' are in default under the FAA is meritless.  Additionally, Plaintiffs concede that they are bound by WBC Rule 5 and it is clear that the claims contained in the Amended Complaint allege violations of WBC Rules.  Accordingly, Defendants' Motion to Stay the proceedings is GRANTED.

CONCLUSION

For the reasons set forth, Defendants' joint Motion to Stay this action pending non-binding mediation under WBC Rule 5.3, and if necessary, binding arbitration under WBC Rule 5.4, is GRANTED. The Clerk of Court is directed to place this action on the suspense docket.  The Parties shall advise the Court in writing of the outcome of mediation, and if necessary, of arbitration. SO ORDERED.

Dated:    New York, New York

September 24 , 2007

DEBORAH A. BATTS
United States District Judge

14